Thomas Wiedow et al., Plaintiffs Below. Thomas Wiedow, Appellee, v. Ellen Alden Carpenter et al. Appeal of Ellen Alden Carpenter and Landmore Liquor Company, Appellants.

Gen. No. 41,568.

Opinion filed May 19, 1941. Rehearing denied June 13, 1941.

EKERN & MEYERS and SIDLEY, MCPHERSON, AUSTIN & BURGESS, both of Chicago, for appellants; DONALD L. THOMPSON, RUSSELL H. MATTHIAS, VERNON A. FORSBERG, ADLAI E. STEVENSON, RALPH F. HIMMELHOCH and CHARLES F. MARTIN, all of Chicago, of counsel.

SAMUEL A. RINELLA, of Chicago, for appellee; JOSEPH BARBERA and HARRY G. FINS, both of Chicago, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is an action under the Dram Shop Act. (Ch. 43, par. 135, § 14, art. 6, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 68.042].) Upon trial by a jury plaintiff had a verdict and judgment for $20,000 against Ellen Alden Carpenter, the owner of the premises and Landmore Liquor Company, a corporation, which operated the dram shop, and Sigurd Erickson, the assailant who injured plaintiff. The first two named defendants appeal.

It is conceded that Ellen Alden Carpenter on November 14, 1938, the date of the instant occurrence, owned the property at 1046 Leland avenue, in Chicago; that defendant Landmore Liquor Company was her tenant, operating a tavern on the premises, selling alcoholic liquors. On the day in question plaintiff, at about 5 o'clock in the afternoon, went into the tavern for a glass of beer; he remained there fifteen or twenty minutes; he was carrying two bundles; as he was leaving the tavern he accidentally dropped one bundle and as he stooped to pick it up defendant Erickson fired a blank cartridge from a pencil gun into plaintiff's rectum; plaintiff did not know Erickson and had no conversation with him while in the tavern; he started for home and had gone a short distance when he felt blood running down into his shoes; he felt dizzy and fell, was picked up and assisted to his home and later taken to the Lakeview Hospital, and then to the Hines Hospital, as he was a veteran of the Spanish-American War. He was seriously injured.

Although there is some dispute, it was sufficiently proved that Erickson was drunk at the time of the shooting. A witness testified that Erickson shot the pencil gun several times before he shot plaintiff; that he was served repeatedly with drinks and was drunk the first time he took out his pencil gun, and continued to drink after that for about half an hour or forty-five minutes. Lewis, the bartender, testified he served drinks to Erickson during the time he heard reports

from the pencil gun; that Erickson shot the weapon about four times before shooting plaintiff; that he continued to sell Erickson liquor after he determined that he was intoxicated. There is little if any dispute as to the facts.

Counsel for defendants cite a number of alleged procedural errors which it is claimed require a reversal. It is said the court erred in overruling the motion of the dram shop defendants for severance and a separate trial from defendant Sigurd Erickson. It is argued that it tended to confuse the jury to submit a charge against the owner of the premises and the tavern keeper, under the Dram Shop Act, and at the same time a charge against Erickson seeking damages because of a wilful and wanton assault by him upon plaintiff.

The three defendants were properly joined in the one complaint. Section 24 of the Civil Practice Act (ch. 110, par. 148) provides for the joinder of defendants in one action when a liability is asserted against them arising out of the same transaction, regardless of the number of causes of action joined, and Rule 12 of the Supreme Court (ch. 110, par. 259.12) provides that different breaches of duty, whether statutory or at common law, ''growing out of the same transaction, or based on the same set of facts may be treated as a single claim or cause of action, and set up in the same count.'' In *Baker v. S. A. Healy Co.*, 302 Ill. App. 634, the Healy company was sued on the basis of negligence, the Sanitary District of Chicago on the basis of liability by reason of the State Constitution and the Sanitary District Act, and the city of Chicago was also sued because it permitted dangerous work to be done in the street; a motion was there made to dismiss because of the purported misjoinder of the parties. It was held proper to join the three defendants in the same complaint although the liability of each defendant was upon a different basis. While the respective

claims may be differently named, yet they are based on the same occurrence. Defendants cite *Randall Dairy Co. v. Pevely Dairy Co.*, 278 Ill. App. 350. There the plaintiff joined in a single count a cause of action for slander and a cause of action for enticing away plaintiff's servants. This was held bad as the breaches did not grow out of the same transaction, nor were they based on the same set of facts. In the instant case the breaches were based upon the same set of facts, and an order of severance would simply mean two separate trials presenting the same facts.

Section 51 of the Civil Practice Act provides that actions may be severed or consolidated, as an aid to convenience, "whenever it can be done without prejudice to a substantial right." See *Barnes v. Swedish American Nat. Bank*, 371 Ill. 20, 25.

The complaint set out the Dram Shop Act, and specifically the section (par. 135, § 14, art. 6) which provides for "exemplary damages" by stating that one who "shall knowingly permit therein the sale of any alcoholic liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving alcoholic liquors aforesaid, for all damages sustained, and for exemplary damages." This reasonably informed defendants of the nature of the claim which they would be called upon to meet. This was sufficient. Section 42, Civil Practice Act.

When the case came on for trial and Frank Lewis, the bartender for the Landmore Liquor Company, had testified he had sold Erickson liquor while he was intoxicated, the court allowed an amendment to the amended complaint in order to conform to the proof. This amendment alleged that the Landmore Liquor Company, through its agents, wilfully continued to serve intoxicating liquor to defendant Erickson while he was in an intoxicated condition prior to the shoot-

ing in question, which intoxicating liquor aggravated the intoxicated condition of Erickson, and that this sale was made wilfully and wantonly, entitling plaintiff to recover, from defendants Carpenter and the Liquor company, punitive damages in addition to the actual damages sustained. It was proper to allow this amendment. Section 46 of the Civil Practice Act provides that a pleading may be amended at any time to conform the pleadings to the proofs. *Jackson v. Jackson,* 294 Ill. App. 552; *Duncan v. Kammeier,* 206 Ill. App. 207. We also note that defendants made no motion to strike this amendment but, by stipulation of the parties, filed an answer thereto.

Two physicians connected with the Hines Hospital, Dr. Brown and Dr. Martin, testified as to the extent of plaintiff's injuries. In an attempt to impeach their testimony defendants sought to introduce a summary of the hospital record which contained the statement, "The wound healed, he has good rectal sphincteric control." This portion of the summary was not admitted. It was composed by a board of physicians only one of which examined and treated plaintiff. None of these physicians was called as a witness. The summary was merely the conclusion of the physicians, who based their opinions not upon an examination of the patient but upon examination of the hospital record. A similar point was involved in *Branch v. Woulfe,* 300 Ill. App. 472, where a hospital record made by a doctor not a witness in the cause was properly excluded. See also *Plewe v. Chicago Motor Coach Co.,* 283 Ill. App. 57.

Moreover, the statement in the summary which was ruled out by the court was conveyed to the jury in the cross-examination of Dr. Brown. The statement in the summary was read to him: "The wound healed, he has good rectal sphincteric control," and when asked as to whether that was true the doctor replied

he did not know about the patient's sphincteric control; that his signature was not on the report and that he had nothing to do with it.

Defendants complain of the action of the trial court in excluding written reports prepared by two professional investigators who claim to have written down what certain witnesses for plaintiff told them. These reports were not signed by the witnesses. Although counsel do not agree as to what took place in this connection, we think it can be said that while these investigators did take the stand they did not testify as to any statements made by the witnesses for plaintiff contrary to their testimony upon the trial. The investigators were not devoid of recollection as to what the witnesses for plaintiff had said, hence *Koch v. Pearson*, 219 Ill. App. 468, does not apply. It would be a dangerous practice to admit into the record a written report by a professional investigator of what purported to be contrary statements (unsigned) made by a witness.

We find no reversible error in the instructions given on behalf of plaintiff. Twenty-three instructions were given by the court: ten for plaintiff and thirteen for defendants. Plaintiff's instruction No. 1 is criticized as dealing with concurrent negligence. It is said there was no concurrent negligence involved in the case. If this were true the instruction was harmless, but in view of the evidence of the bartender Lewis as to serving of liquor to Erickson after he was intoxicated, the jury could find there was concurrent negligence. Plaintiff's instruction No. 2 was in the words of the Dram Shop statute and was properly given. *Reisch v. People for use of Stringer*, 229 Ill. 574, 577.

Plaintiff's instruction No. 3 told the jury that if they found the Landmore Liquor Company sold alcoholic liquor to Erickson after he became and was intoxicated in the tavern by reason of drinking such liquor, and if they further found that defendant Carpenter was the owner of the property, and the

assault made by Erickson upon plaintiff was the result of such intoxication, then the jury may assess exemplary damages. Having in mind the testimony of Lewis, the bartender, that he sold Erickson liquor, the testimony of another witness that Erickson was drunk the first time he shot the gun and kept on drinking and that he had four drinks when the witness first saw him weaving around and he had some more drinks after that, the instruction was proper.

A similar instruction was approved in *Rude v. Fakes,* 143 Ill. App. 456, and also *Jacoby v. Stark,* 205 Ill. 34. In the latter case it was held that exemplary damages ''may be recovered as part of the general damages if the evidence discloses a proper case for the infliction thereof.'' See also *Taneski v. St. Louis M. B. T. Ry. Co.,* 230 Ill. App. 300. It is said there is no evidence to justify exemplary damages. A similar objection was made to an instruction given in *Buck v. Maddock,* 167 Ill. 219, where it was held that giving intoxicating liquor to one already under the influence justified giving the instruction with reference to exemplary damages. See also *England v. Cox,* 89 Ill. App. 551. We might add that the amount of the verdict does not indicate that exemplary damages were allowed. We see no reversible error in the instructions given on behalf of plaintiff.

It might be noted that the instructions given at the request of defendants safeguarded all the rights of defendants. As was said in *Crosby v. DeLand Special Drainage District,* 367 Ill. 462, ''No instruction need state all the law in a case. It is sufficient if, taken as a series, the jury is correctly advised as to the law applicable to the case. (*Minnis v. Friend,* 360 Ill. 328.)''

The verdict was not excessive. When plaintiff was taken to the hospital he was operated upon under a spinal anaesthetic; there was a lacerated wound of the perineum, rectum and anus; it was necessary to perform the operation of colostomy, which is an arti-

ficial opening through which the fecal matter may be carried off to one side; in this operation the intestines are brought from the abdominal cavity to the outside; the dead tissues of the rectum were trimmed away; this was done for the purpose of keeping the rectum and anus clean so that it could be irrigated and washed from below and from above; the colostomy remained from November 17, 1938, to February 1, 1939, when he was again placed under an anaesthetic and the hole in the colon was sewed up; scar tissue extended from the skin into the rectum for about three inches and above the sphincter muscles; he was discharged from the hospital on February 20, 1939. The sphincter muscles were lacerated and permanently damaged; the scar tissue irritates the sphincter muscles and removes the sensation that is necessary for control of the bowels. The doctors testified that he will suffer from rectal trouble for the rest of his life; that his bowels move unconsciously, which, in addition to his physical inconvenience and suffering, deprives him of employment possibilities, due to the reluctance of others to remain in his company, as his condition makes him offensive to others. Plaintiff was a painter and decorator by trade; he was sixty-three years of age when he was injured; previous to this injury he was earning $10 a day; after he left the hospital he was working for $6 a day; before the injury he weighed 174 pounds and afterwards 155 pounds. We cannot say that $20,000, the amount of the judgment, is excessive considering the seriousness and permanency of plaintiff's injuries.

Other points are argued for reversal, but nothing of substantial importance. The facts are virtually undisputed, and there were no reversible errors committed upon the trial.

The judgment is therefore affirmed.

*Judgment affirmed.*

O'Connor, P.J., and Matchett, J., concur.