JAMES KENNEDY *et al.*, Plaintiffs-Appellants, v. BOBBIE AND CLYDE'S, INC., Defendant-Appellee.

First District (5th Division)   No. 1—90—1294

Opinion filed March 27, 1992.

Ronald H. Balson, of Chicago, for appellant Marin Moreno.

Sherwin Greenberg, of Chicago (Ronda M. Cooper, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff Marin Moreno[1] appeals from an order entering summary judgment in favor of defendant Bobbie & Clyde's, Inc., in this dramshop action. On appeal, plaintiff contends that genuine issues of material fact remain regarding the question of plaintiff's complicity which would bar his recovery under the Illinois Dramshop Act (Ill. Rev. Stat. 1989, ch. 43, par. 135).

The complaint alleges that on August 24, 1983, plaintiff suffered personal injuries resulting from an automobile accident where he and Kenneth Raspberry were passengers in a car driven by their friend, James Kennedy, who was allegedly intoxicated as a result of the defendant tavern's having served him liquor prior to the accident.

On October 23, 1986, defendant filed an affirmative defense alleging that "plaintiff voluntarily participated to a material and substantial extent in the drinking which led to such intoxication in that plaintiff was drinking with JAMES KENNEDY for a period of several hours immediately prior to the incident alleged in the complaint."

---

[1]Plaintiff James Kennedy was dismissed from this lawsuit on December 14, 1984, although the caption of the case remained unchanged.

On January 10, 1990, defendant filed a motion for summary judgment based on the affirmative defense of complicity. Both parties relied on the deposition testimony of plaintiff, Kennedy and Raspberry.

Plaintiff testified at his deposition that on August 23, 1983, at about 7 p.m., Kennedy came to his home. The three men went out and bought some beer at a liquor store. They "all pitched in" to buy the beer. Plaintiff did not recall how much beer they bought. They "drank a few beers and then we went to the bar." Plaintiff did not know how much he or the other two men drank, but it was more than two beers each. Within an hour, they drove to defendant's tavern, where they arrived at about 9 p.m. or 10 p.m. They remained there "[a]t least two or three" hours. It could have been more than four hours.

Plaintiff testified further that the three men were together "on and off." There were probably 100 people in the tavern, and they socialized with other people. Plaintiff "was talking with some girl there and she was shooting a little pool." At one point, plaintiff ran out of money and the girl bought him drinks. Altogether, plaintiff spent around $20 or $25.

Plaintiff had no idea how much he drank. He was "drinking mixed drinks." He did not know what the other two men were drinking. "I couldn't tell you." Plaintiff paid for "some of them." Sometimes he and Kennedy and Raspberry ordered drinks in rounds of three. Sometimes they took turns paying for rounds. He could not estimate how many rounds they drank, but it was at least five. "I couldn't tell you, but it was at least five [rounds] that I drank with them."

Plaintiff testified that he, Kennedy and Raspberry became intoxicated. At some point on the way home they stopped and Kennedy and Raspberry argued. Plaintiff believed Kennedy was "driving fine." Kennedy was "usually *** very careful about that because he knew he had been drinking and the police out there are pretty strict." Plaintiff "passed out" while they were driving in the car.

Kennedy testified at his deposition that on August 23, 1983, at 11:30 p.m., he drove to plaintiff's home and picked up plaintiff and Raspberry. They agreed to go drinking at defendant's tavern because it was quarter beer night. They did not stop to pick up any alcohol on the way to the tavern. They arrived at the tavern at about midnight and remained there until closing time, at 4 a.m. During that time, plaintiff and Kennedy each drank five or six beers. Plaintiff did not buy beer for Kennedy. "No. We just had our money on the bar." Kennedy put $4 on the bar when he arrived. When he left, he still had about $2.

Kennedy testified that the three men were not together the entire time they were in the tavern. "Raspberry went to the other side. There is a disco on one side and pool tables on the other side. Me and [Moreno] were on the pool side."

Kennedy testified further that when he left the tavern, he was not intoxicated. While they were driving home, Kennedy and Raspberry began to argue. Kennedy stopped the car, he and Raspberry got out of the car and Raspberry punched Kennedy in the face four times. Plaintiff intervened, and the three men then continued to drive home. Shortly thereafter, they were in a car accident.

Raspberry testified at his deposition that on August 23, 1983, Kennedy picked up Raspberry and Moreno at 10 p.m. They did not stop at a liquor store that night. They arrived at the tavern at about 10:15 p.m., staying until 4 a.m. All three men drank about 10 beers each during their time at the tavern. Raspberry testified further:

"Q. Were you in Mr. Kennedy's company the entire time you were at Bobbie & Clyde's?

A. Yes."

They sat on stools together at the bar. They might have separated "just to play a pool game." Raspberry did not believe that plaintiff or Kennedy played pool. Plaintiff and Kennedy did, however, get off the bar stools at some point during the six hours.

"Q. Did you buy any drinks for Mr. Kennedy while you were there?

A. Yes.

Q. Do you know how many you bought him?

A. A few. We all took turns.

Q. Did Kennedy buy any drinks for you?

A. Yes.

Q. Do you know how many he bought you?

A. About the same amount I bought him, say three apiece or something.

Q. What about Mr. Moreno, did he buy drinks for Mr. Kennedy?

A. Yes.

Q. So both of you bought Kennedy drinks?

A. Yes."

Raspberry testified further that Kennedy did not appear intoxicated when he left the tavern, or on the way home when he started a fight with Raspberry. Raspberry himself was "pretty much" sober. Kennedy and plaintiff were sober. Neither he nor plaintiff suggested to Kennedy that he should not drive.

Raspberry stated that he spent about $4 or $5 on drinks. Each time they bought drinks, the bartender served all three men beers at the same time. They all had their money on the bar.

After they left the tavern, Kennedy was talking about going to another bar. At one point, they got out of the car to fight. Raspberry struck Kennedy a few times. Plaintiff immediately broke up the fight. Raspberry fell asleep, but woke up just before the accident and noticed that Kennedy's eyes were closed and he "was nodding back as if he was sleeping."

On April 9, 1990, the trial court entered summary judgment in favor of defendant.

OPINION

Plaintiff contends that summary judgment was not appropriate because genuine issues of material fact remain concerning plaintiff's alleged complicity. Defendant maintains, and the trial court found, that plaintiff was guilty of complicity as a matter of law, thus barring plaintiff's recovery for his personal injuries.

Summary judgment is proper where the pleadings, affidavits, depositions and admissions on file establish that no genuine issue of material fact remains and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) In considering these documents, the court must construe them strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) The grant of summary judgment preempts the right of trial and thus the law imposes a strict burden on the movant, and his right to summary judgment must be clear and free from doubt. *Yusuf v. Village of Villa Park* (1983), 120 Ill. App. 3d 533, 458 N.E.2d 575.

On a motion for summary judgment, the movant has the burden of persuasion. (*Purtill v. Hess*, 111 Ill. 2d at 240.) If reasonable people could draw more than one conclusion or inference from the facts, a triable issue remains and the motion for summary judgment should be denied. *Practical Offset, Inc. v. Davis* (1980), 83 Ill. App. 3d 566, 570, 404 N.E.2d 516.

Where the movant is a defendant, the materials relied upon must establish defendant's factual position on the essential elements of either plaintiff's cause of action or defendant's affirmative defense. (*Abel v. General Motors Corp.* (1987), 155 Ill. App. 3d 208, 507 N.E.2d 1369; *Becovic v. Harris Trust & Savings Bank* (1984), 128 Ill. App. 3d 107, 469 N.E.2d 1379.) Plaintiff, in turn, need not disprove facts produced by the movant/defendant, but merely has to establish

that there is factual evidence showing another version of the relevant events, thus creating a genuine issue as to which version is true. (*Beals v. Huffman* (1986), 146 Ill. App. 3d 30, 496 N.E.2d 281.) We find that plaintiff has successfully met that burden here and has established factual issues sufficient to withstand a motion for summary judgment.

■■ ■ Section 6—21 of the Dramshop Act provides that any individual who is "injured *** by any intoxicated person has a right of action *** against any person, licensed under the laws of this State *** to sell alcoholic liquor, who, by selling or giving alcoholic liquor *** causes the intoxication of such person." (Ill. Rev. Stat. 1989, ch. 43, par. 135(a).) The Act "provides no statutory defenses." *Nelson v. Araiza* (1978), 69 Ill. 2d 534, 538, 372 N.E.2d 637.

Illinois law bars such recovery, however, if the injured person is not free from complicity. (*Davis v. S S S Development, Inc.* (1991), 213 Ill. App. 3d 905, 572 N.E.2d 396.) This bar to recovery "has its genesis not in the statute but in judicial decisions," and is an "outgrowth of the 'innocent suitor' concept." (*Nelson v. Araiza*, 69 Ill. 2d at 538.) The defense of complicity is "based on the premise that one who is guilty of complicity in the inebriate's intoxication should not be allowed to succeed," since this would "undermine the purpose of the Act in controlling abuses of the liquor trade." (*Nelson v. Araiza*, 69 Ill. 2d at 538-39.) The rule of complicity is that "only one who actively contributes to or procures the intoxication of the inebriate is precluded from recovery." (*Nelson v. Araiza* (1978), 69 Ill. 2d 534, 543, 372 N.E.2d 637; see also *Davis v. S S S Development, Inc.*, 213 Ill. App. 3d at 908.) The court in *Nelson* went on to state:

"In many cases this will be an issue of fact under the given circumstances. In other cases whether there is sufficient evidence to support the doctrine as enunciated will be for judicial determination." *Nelson v. Araiza*, 69 Ill. 2d at 543.

The *Nelson* court's admonishment that "[d]ecisions on complicity are a mass of inconsistency" (*Nelson*, 69 Ill. 2d at 541) remains true today. (See generally Annot., *Third Person's Participating in or Encouraging Drinking as Barring Him from Recovering under Civil Damage or Similar Acts*, 26 A.L.R.3d 1112 (1969).) Illinois decisions are conflicting with regard to whether or not a question of fact exists when there is some evidence showing that plaintiff and the inebriate went on a tour of taverns together, drank together, or bought drinks for each other.

For example, one line of Illinois cases apparently holds that such evidence, without more, is sufficient to bar recovery as a matter of

law. See, *e.g., Reget v. Bell* (1875), 77 Ill. 593 (plaintiff's action for injuries caused by husband's intoxication was barred because she did not take away a jug of liquor from her husband); *Davis v. S S S Development, Inc.*, 213 Ill. App. 3d 905, 572 N.E.2d 396 (affirming summary judgment for defendant based on plaintiff's complicity, which was established as a matter of law; plaintiff initiated the drinking by offering the inebriate whisky, accompanied inebriate to defendant's store and told her what liquor to buy, and consumed the liquor with the inebriate); *Lewis v. Champaign County V F W Post No. 5520* (1989), 187 Ill. App. 3d 73, 543 N.E.2d 233 (affirming summary judgment for defendant based on plaintiff's complicity; plaintiff went to tavern with friend for business purpose, and friend had one drink; they went to V F W for business purposes and then spent afternoon drinking together at V F W; then went to Legion for business, and spent evening drinking together; then left together and inebriate assaulted plaintiff); *Sterenberg v. Sir Loin, Inc.* (1989), 183 Ill. App. 3d 631, 634-35, 539 N.E.2d 294 (affirming summary judgment for defendant; the "facts establishing the plaintiff's participation are admitted [and thus] no question of fact exists and summary judgment is proper"; plaintiff admitted she watched inebriate drink in his apartment, then accompanied him to a club where they both drank, then went with him to the defendant's restaurant where they drank together through dinner and afterwards at defendant's bar); *Leischner v. Daniel's Restaurant, Inc.* (1977), 54 Ill. App. 3d 568, 370 N.E.2d 157 (complicity established as a matter of law where plaintiff shared drinking with husband at home and then went out drinking with him prior to accident); *Holcomb v. Hornback* (1964), 51 Ill. App. 2d 84, 200 N.E.2d 745 (recovery denied as a matter of law where plaintiff accepted drinks from the inebriate); *Baker v. Hannan* (1963), 44 Ill. App. 2d 157, 159, 194 N.E.2d 563 (complicity found as a matter of law where plaintiffs "spent considerable time drinking in the company of the" inebriate, since plaintiffs were twice in presence of the inebriate in two taverns, and in each tavern he bought beer for plaintiffs); *Burnley v. Moore* (1963), 41 Ill. App. 2d 156, 190 N.E.2d 141 (plaintiff/bartender cannot recover because he served the intoxicated person a drink; plaintiff did not buy drinks for, or drink with, the inebriate); *Tezak v. Cooper* (1960), 24 Ill. App. 2d 356, 164 N.E.2d 493 (recovery denied as a matter of law where plaintiff accepted drinks from the inebriate); *Meier v. Pocius* (1958), 17 Ill. App. 2d 332, 150 N.E.2d 215 (recovery denied as a matter of law where plaintiff went on a tour of taverns and joined in drinking, even though he did not buy the inebriate any liquor).

However, there is a second line of Illinois cases which holds that in such instances a factual question exists where the record establishes facts similar to the cases cited above, *i.e.*, showing that plaintiff and the inebriate toured taverns together or drank together. These cases hold that ultimately the trier of fact must determine whether the facts are sufficient to establish that the plaintiff actively procured the intoxication of the inebriate. See, *e.g., Nelson v. Araiza*, 69 Ill. 2d 534, 372 N.E.2d 637 (reversing directed verdict for defendant; issues of fact remain regarding plaintiff's complicity); *Merritt v. Chonowski* (1978), 58 Ill. App. 3d 192, 373 N.E.2d 1060 (reversing summary judgment for defendant; question of fact remains as to complicity where plaintiff toured taverns and drank beer with the inebriate); *Krepfl v. Burke* (1974), 24 Ill. App. 3d 173, 321 N.E.2d 30 (complicity is a question of fact where plaintiff accompanied the inebriate on a tour of taverns); *Dunkelberger v. Hopkins* (1964), 51 Ill. App. 2d 205, 200 N.E.2d 905 (complicity is a question of fact where plaintiff accompanied the inebriate on a tour of taverns); *Guardado v. Navarro* (1964), 47 Ill. App. 2d 92, 197 N.E.2d 469 (complicity is a question of fact where plaintiff accompanied the inebriate on a tour of taverns); *Busser v. Noble* (1959), 22 Ill. App. 2d 433, 161 N.E.2d 150 (complicity is a question of fact where plaintiff accompanied the inebriate on a tour of taverns); *Ness v. Bilbob Inn, Inc.* (1957), 15 Ill. App. 2d 340, 146 N.E.2d 234 (complicity is a question of fact where plaintiff accompanied the inebriate on a tour of taverns; plaintiff drank with, but did not buy drinks for the inebriate).

The latest Illinois Supreme Court case on the subject is *Nelson v. Araiza* (1978), 69 Ill. 2d 534, 372 N.E.2d 637, which tracks this second line of cases. In *Nelson*, the court reversed and remanded for a new trial because the trial court had erred in directing a verdict for defendants based on the affirmative defense of complicity. The court found that complicity was an issue of fact because the evidence of complicity did not so overwhelmingly favor the dramshop defendants that no verdict in plaintiff's favor could stand. In that case, the evidence established that plaintiff went to a tavern, where she saw a friend, Araiza, who appeared to be drunk. Plaintiff allowed him to buy her beer, and then she left him at the bar and joined her other friends at a table.

Like the present case, there was evidence in *Nelson* indicating that plaintiff did not spend any time with Araiza at the tavern after he bought plaintiff the beer. As plaintiff was leaving the bar several hours later, Araiza offered to give her a ride, which plaintiff initially declined, but then accepted the ride in order to avoid a "hassle."

Araiza stopped at another tavern, bought beer, and drove to a friend's house. The *Nelson* facts offered even stronger evidence of complicity because plaintiff and Araiza then spent several hours together at the friend's house, drinking the beer they had bought. Plaintiff then agreed to go with Araiza to a restaurant if plaintiff could drive. After leaving the restaurant, however, plaintiff let Araiza drive, and they were in an accident.

Despite this evidence of complicity, which is stronger than the evidence in the present case, our supreme court found that factual questions precluded entry of summary judgment for defendant. *Nelson v. Araiza*, 69 Ill. 2d 539, 372 N.E.2d 637.

■■ In the present case, the evidence is unclear as to the amount of time plaintiff and Kennedy spent together. There is testimony that Kennedy picked plaintiff up and they went to the tavern at 9 p.m., 10 p.m., and 11:30 p.m. There is testimony that they were at the tavern for anywhere from two to six hours. There is testimony that the three men were together the entire time at the tavern, or "on and off," or hardly any time at all. There is testimony that they all drank beer the entire night or that plaintiff drank mixed drinks. There is testimony that they took turns buying each other drinks, and testimony that they each bought their own drinks. This factual dispute regarding whether they paid for each other's drinks and whether they drank beer or hard liquor is further evidenced by the testimony that on Monday nights at the defendant tavern the beer costs only one quarter. Yet plaintiff says he spent $25; Kennedy says he spent $2; and Raspberry says he spent $5.

There is also a dispute regarding the amount they drank. Plaintiff testified he had five rounds or more of mixed drinks; Kennedy says they each drank five beers; Raspberry says they each drank 10 beers. There is a dispute as to whether each man believed that he or his two companions were intoxicated at various times during the evening and early morning hours. There is also a dispute as to whether or not they bought beer at a liquor store and drank it before ever going to the tavern.

Thus, there are factual issues remaining both as to what actually occurred and what conclusions may be drawn from those facts that actually occurred. In view of the conflicting and limited testimony available in this record, we find that we are bound by *Nelson*. We must conclude that reasonable people could differ on the question of whether the facts presently in this record establish that plaintiff is free from complicity.

Notwithstanding the Illinois cases cited above which have held that complicity is established as a matter of law where the affidavits and depositions on file show that plaintiff and the intoxicated person were drinking together prior to the injury to plaintiff, we must conclude that under the holding in *Nelson*, there are genuine issues of material fact remaining here in regard to whether plaintiff actively contributed to or procured Kennedy's intoxication. We hold that the trial court erred in granting summary judgment.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

McNULTY, P.J., and MURRAY, J., concur.