(No. 75129.—

WAYNE D. WALTER, Appellee, v. CARRIAGE HOUSE HOTELS, LTD., *et al.* (Carriage House Hotels, Ltd., Appellant).

*Opinion filed January 19, 1995.*

HARRISON, J., took no part.
MILLER, J., joined by FREEMAN, J., specially concurring.
BILANDIC, C.J., joined by NICKELS, J., concurring.
HEIPLE, J., dissenting.

Thomas L. Kilbride, of Klockau, McCarthy, Ellison & Marquis, P.C., of Rock Island, for appellant.

Michael J. Meyer, of Meyer, Keller & Runde, of Effingham, for appellee.

JUSTICE McMORROW delivered the judgment of the court:

In this appeal we review application of the doctrine of complicity, a judicially created affirmative defense to

actions filed pursuant to section 6—21 of the Liquor Control Act of 1934 (the Dramshop Act) (Ill. Rev. Stat. 1987, ch. 43, par. 135 (now codified at 235 ILCS 5/6—21 (West 1992))).

Plaintiff, Wayne D. Walter, filed suit, in the circuit court of Effingham County, against the dramshop defendant, Carriage House, and the allegedly intoxicated individual who caused plaintiff's injuries, David Shelton. Shelton did not appear at trial and is not a party to this appeal. Carriage House filed an affirmative defense, alleging that plaintiff "was guilty of complicity in that plaintiff actively contributed to, participated in, or procured the intoxication of David Shelton and is therefore precluded from recovery." The trial court denied the dramshop's motions for directed verdict on the ground that the issue of plaintiff's complicity in Shelton's intoxication presented a question of fact for the jury.

The jury found in favor of plaintiff and awarded him approximately $39,600 in damages. The appellate court affirmed the judgment of the trial court. (239 Ill. App. 3d 710.) In this court, Carriage House contends that the trial court should have directed a verdict in its favor on the issue of plaintiff's complicity in the intoxication of Shelton and plaintiff's resulting injury. In addition, Carriage House cites to conflicting decisions in the different districts of our appellate court concerning the application of the doctrine of complicity. Further, Carriage House argues that it was denied a fair trial because the court denied its motion to sever its trial from that of the absent codefendant, Shelton.

We affirm.

## BACKGROUND

On the evening of July 17, 1988, plaintiff and his former wife, Loretta Garrett, went out to dinner with Shelton and Shelton's girlfriend, Connie Osborne. The

four arrived at the Brass Rail and Lounge, where the waitress informed them that it was too late for food service. While there, plaintiff and Shelton each had one beer. The group then went to Ichabod's, where they ate dinner. Plaintiff and Shelton each had one beer with dinner, and plaintiff paid the bill.

From Ichabod's, the group drove to the Carriage House Hotel and sat at a table in a lounge where they listened to music. They stayed at the lounge from approximately 8 p.m. to 11:45. Shelton did not sit at the table for the entire evening; sometimes he danced with Connie or went to the bar. During the evening, Shelton consumed 10 or 12 beers and an equal number of shot glasses of whisky. Plaintiff drank three or four beers. He testified that Shelton was drinking heavily but plaintiff did nothing to encourage or discourage him. Shelton bought all of the liquor that was consumed at the Carriage House Hotel.

At approximately 10:30, Shelton and his date, Connie, began to argue. Connie left the bar and plaintiff asked Loretta to go after her. Shelton became belligerent, and when plaintiff offered to take the car and go look for Connie, Shelton ordered him to sit down. They remained awhile longer, until plaintiff persuaded Shelton it was time to leave. Outside the Carriage House Hotel, plaintiff, Shelton, and Loretta found Connie waiting at plaintiff's car. Plaintiff drove everyone back to his apartment. Shelton's car was in a lot adjacent to plaintiff's apartment, and Shelton got into his own car and sped away, leaving Connie behind. Loretta offered to let Connie spend the night at Loretta's apartment and the two women left.

Plaintiff testified that he drove to a nearby restaurant for a cup of coffee and a sandwich, then returned to his apartment. Shortly after his arrival home, at approximately 1 or 1:30 a.m., Shelton appeared at

plaintiff's door. As he entered plaintiff's apartment he asked where Connie was and plaintiff told him. Plaintiff suggested that Shelton spend the night on plaintiff's couch. Shelton became belligerent, insisting on calling Connie immediately. Plaintiff tried to reach Loretta by telephone, without success. Shelton took the telephone receiver and hit plaintiff with it, repeatedly smashing it into plaintiff's face and jaw. Plaintiff fell to the floor and feigned unconsciousness. Shelton went into the bathroom, at which time plaintiff rose and headed toward his bedroom. Shelton intercepted him and resumed the attack, knocking plaintiff down and kicking him repeatedly. Again, plaintiff pretended to lose consciousness and Shelton left the apartment. A neighbor summoned the police and plaintiff was taken to a hospital. There he was diagnosed with a broken jaw, a fractured skull, four broken ribs, eye injuries, and numerous cuts and bruises.

Plaintiff filed a two-count complaint naming Shelton and Carriage House Hotels, Ltd., as defendants. Count I was a dramshop action against Carriage House and count II was a battery action against Shelton. Before trial, Shelton wrote a letter to the trial court, stating that he was incarcerated and would not be able to attend the trial. He also claimed that he had no money to pay for legal representation. Carriage House moved to sever the two counts of the complaint, but the trial court denied the motion.

After plaintiff completed his case in chief at trial, Carriage House moved for directed verdict. At the close of all of the evidence, Carriage House again moved for directed verdict. In its motions, Carriage House relied on its affirmative defense, which charged plaintiff with complicity in causing the intoxication of Shelton. The trial court declined to direct the verdict in favor of Carriage House, ruling that the issue of complicity raised a factual question to be resolved by the jury.

## ANALYSIS

### I

The central issue on appeal is whether the trial court properly denied Carriage House's motions for directed verdict because of plaintiff's alleged complicity in causing the inebriation of Shelton. In considering a motion for directed verdict, the evidence is to be viewed in the light most favorable to the party opposing the motion, and the motion should be allowed only if the evidence so overwhelmingly favors the movant that no contrary verdict based upon that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494.) The issue of plaintiff's complicity is a question of fact for the jury if the facts are disputed or capable of more than one inference. *Nelson v. Araiza* (1978), 69 Ill. 2d 534.

In essence, Carriage House contends that plaintiff's "willing participation" in Shelton's drinking constitutes complicity as a matter of law and, pursuant to the complicity affirmative defense, plaintiff is barred from recovering dramshop damages against Carriage House. We examine the existing law of complicity to determine whether the trial court properly denied the motions of Carriage House.

The complicity doctrine is a judicially created, affirmative defense to the statutory liability of those who own or operate establishments that sell liquor. If a person is injured by an intoxicated individual, the injured person has a statutory right of action for limited damages against the dramshop that furnished the alcohol to the inebriated person. (235 ILCS 5/6—21(a) (West 1992).) The "statute was designed to give a substantial remedy and should be allowed to have effect according to its natural and plain meaning." (*Hernandez v. Diaz* (1964), 31 Ill. 2d 393, 399.) The legislative intent of the Dramshop Act is to place responsibility for

damages caused by the intoxication from the consumption of alcohol on those who profit from its sale. (*Kingston v. Turner* (1987), 115 Ill. 2d 445, 457.) The "no fault" liability under the Act has been characterized as penal, "designed to act as a constraint upon those dispensing liquor to the public." (*E.g., Scheff v. Homestretch, Inc.* (1978), 60 Ill. App. 3d 424, 427.) This court has observed that the Dramshop Act "is to be liberally construed to protect the health, safety, and welfare of the people from the dangers of traffic in liquor. [Citation.] It grants every person injured a right of action. It provides no statutory defenses." *Nelson,* 69 Ill. 2d at 538.

Nothing in the Act itself permits a dramshop defendant to defeat an injured party's right of action under the statute because of a plaintiff's contribution to the intoxication of the person causing the injuries. However, early cases developed the "unique defense" of complicity, under which an injured party must be free from fault in order to recover. (*Nelson,* 69 Ill. 2d at 538.) Thus, the majority of decisions permitted the dramshop to escape liability to the plaintiff, if the plaintiff had contributed, even to a slight degree, to the inebriation of the one who caused the plaintiff's injuries. See, *e.g., Reget v. Bell* (1875), 77 Ill. 593, 595 (denying dramshop recovery to widow whose husband drank himself to death; she did not remove his drinking jug and thus was held to be "a willing party to the conduct of her husband, and instrumental in bringing the loss upon herself"); see also *Holcomb v. Hornback* (1964), 51 Ill. App. 2d 84 (affirming summary judgment for dramshop on complicity issue because plaintiff drank one beer purchased for her by inebriate, who shot her four times); *Phenicie v. Service Liquor Store, Inc.* (1960), 23 Ill. App. 2d 492 (plaintiff held in complicity for drinking beer with the inebriate).

*Nelson v. Araiza* (1978), 69 Ill. 2d 534, is the seminal

decision of this court that explores the nature and development of the complicity doctrine. For that reason, we discuss the opinion at some length. The *Nelson* court attempted to ameliorate the harshness of the application of the complicity doctrine by holding that the plaintiff should be precluded from recovery of dramshop damages *only* if plaintiff "*actively contribute[d] to or procure[d]* the intoxication of the inebriate" who caused plaintiff's injuries. (Emphasis added.) *Nelson*, 69 Ill. 2d at 543.

The plaintiff in the *Nelson* case had been in the company of the intoxicated person for several hours before being injured. The inebriated person was the driver of the car and plaintiff was a passenger in the car, which collided with another vehicle, resulting in plaintiff's injuries. The dramshop defendant alleged the plaintiff's participation in the causation of her injuries. The circuit court entered a directed verdict in favor of the dramshop at the close of plaintiff's evidence. The appellate court reversed the trial court's ruling on the complicity defense, holding that the plaintiff's role in the inebriate's intoxication was a question of *fact* for the jury. This court affirmed the appellate court.

This court, in *Nelson,* questioned those decisions which denied plaintiffs' recovery, as a matter of law, merely for accepting drinks from the inebriate (*e.g., Holcomb,* 51 Ill. App. 2d 84; *Phenicie,* 23 Ill. App. 2d 492) or embarking on a "tour of taverns" and joining in the drinking (*e.g., Meier v. Pocius* (1958), 17 Ill. App. 2d 332). The *Nelson* court concluded that a plaintiff's active contribution to or procurement of the inebriate's intoxication was necessary before a plaintiff's dramshop action for damages was barred under the doctrine of complicity. The court observed that whether there is sufficient evidence to support the complicity doctrine as enunciated in *Nelson* will be for judicial determination, but in

many cases, application of the doctrine will be an issue of fact under the given circumstances. *Nelson*, 69 Ill. 2d at 543.

The Dramshop Act was intended to place the economic consequences of intoxicated behavior primarily on the businesses that profited from the liquor trade. By defining complicity in terms of the plaintiff's active and material role in causing the inebriate's intoxication, leading to plaintiff's injury, the *Nelson* court attempted to balance the purposes of the Dramshop Act against the common law concept which precluded plaintiffs from recovering damages if their own negligence contributed to their injuries. Notwithstanding this observation, the court stated that the Dramshop Act "is not predicated on negligence" and therefore, "contributory negligence is not an issue. *** [C]omplicity and contributory negligence are both children of the doctrine that one cannot profit from his own wrong. [Citation.] The pertinent inquiries *** are different. Contributory negligence relates to the plaintiff's role in causing his own injury, while complicity concerns the plaintiff's role in causing the inebriate's intoxication." *Nelson*, 69 Ill. 2d at 539.

The distinction between a plaintiff's role in causing his or her own injury and a plaintiff's role in causing the inebriate's intoxication, which led to the plaintiff's injury, is difficult to discern; one who "causes" another's intoxication, and then is injured by the inebriate's conduct, seemingly has contributed to his or her own injury to some degree. We acknowledge that the courts' inconsistent application of the complicity doctrine may have arisen from the lack of a clear analytical basis for the complicity doctrine.

Although the court in *Nelson* intended to resolve a conflict in the cases regarding the application of the complicity doctrine, reviewing courts have continued to

grapple with the complicity doctrine. In *Kennedy v. Bobbie & Clyde's, Inc.* (1992), 227 Ill. App. 3d 856, 861, the court observed, "The *Nelson* court's admonishment that '[d]ecisions on complicity are a mass of inconsistency' [citation] remains true today." (*Kennedy*, 227 Ill. App. 3d at 861, quoting *Nelson*, 69 Ill. 2d at 541.) Certain post-*Nelson* cases, including those upon which Carriage House relies in the instant case, have continued to enter judgment as a matter of law in favor of dramshops if the plaintiff is found to have "willingly participated" in the drinking activities of the one who becomes intoxicated and causes the injury. *E.g., Sterenberg v. Sir Loin, Inc.* (1989), 183 Ill. App. 3d 631; *Lewis v. Champaign County VFW Post No. 5520* (1989), 187 Ill. App. 3d 73; see also *Parsons v. Veterans of Foreign Wars Post 6372* (1980), 86 Ill. App. 3d 515.

In *Sterenberg v. Sir Loin, Inc.*, the appellate court affirmed the grant of summary judgment in favor of a dramshop, holding that one who "encouraged" the drinking which caused the intoxication, or "willingly participated" to a material and substantial extent in the drinking which led to the inebriate's intoxication, is barred under the complicity doctrine from recovering damages from the dramshop that sold the liquor. The court stated that one who "voluntarily joined in the drinking activities" or provided "significant companionship" to the intoxicated person who was drinking cannot recover for his or her injuries caused by the intoxicated person. *Sterenberg*, 183 Ill. App. 3d at 634.

*Sterenberg* primarily relied on cases which predated the *Nelson* court's opinion, and were either directly or indirectly discredited in that opinion as being among the less well-reasoned precedents. (*E.g., Holcomb*, 51 Ill. App. 2d 84; *Phenicie*, 23 Ill. App. 2d 492.) Moreover, *Sterenberg* extensively cited to and relied on *Parsons v. Veterans of Foreign Wars Post 6372* (1980), 86 Ill. App.

3d 515, a case which upheld the giving of a complicity jury instruction which predated the *Nelson* court's definition of complicity.

In *Parsons*, the appellate court affirmed the jury's verdict in favor of defendant, rejecting the plaintiff's argument that Illinois Pattern Jury Instructions, Civil, No. 150.17 (2d ed. 1971) (hereinafter IPI Civil 2d) no longer stated the correct law of complicity in light of this court's pronouncements in *Nelson*. That instruction, which appears substantially the same as the one tendered in the instant case, instructed the jury that the plaintiff could not recover if she "[w]illingly encouraged the drinking which caused the intoxication of" the inebriate or if she "[v]oluntarily participated to a material and substantial extent" in the drinking that led to the intoxication. *Parsons*, 86 Ill. App. 3d at 516.

The facts in *Parsons* justified the affirmance of the jury's verdict because plaintiff's participation in the intoxication of the inebriate was substantial. The circuit court properly submitted the complicity issue to the jury. However, we believe that the IPI instruction approved in *Parsons* distorted, to a significant degree, the *Nelson* court's reformulation of the complicity doctrine. By characterizing complicity as plaintiff's "willing encouragement" of or "voluntary participation" in the drinking that led to the intoxication, the instruction may have blurred the distinction between actively causing another's intoxication and merely providing social companionship to the person who becomes intoxicated.

Similarly, in *Lewis v. Champaign County VFW Post No. 5520* (1989), 187 Ill. App. 3d 73, the appellate court affirmed the trial court's grant of summary judgment in favor of the defendant under an analysis of complicity that reactivated the pre-*Nelson* reasoning. In *Lewis*, the plaintiff and the inebriate had often combined their

business dealings with socializing over drinks, as they did on the day that plaintiff was injured by the inebriate. The court ruled that although the plaintiff had not physically provided the inebriate with alcohol and had in fact attempted to limit his drinking, she could not recover against the VFW because she was "guilty of complicity" as a matter of law, based on these factors: (1) she had "embark[ed] on a tour of taverns" with the inebriate; (2) she "voluntarily joined in drinking" with the inebriate; and (3) she "had adequate cause to fear for her physical safety" prior to returning to her home with the inebriate. (*Lewis*, 187 Ill. App. 3d at 76.) In support of the first two factors the court cited pre-*Nelson* cases of questionable viability, and in support of the third factor the court cited no cases. The court's reference to plaintiff's appreciation of a risk of physical harm is in direct conflict with the *Nelson* court's rejection of assumption of the risk as a defense to dramshop liability. *Nelson*, 69 Ill. 2d at 543.

In contrast to the reasoning in *Sterenberg* and *Lewis*, other appellate cases decided after *Nelson* have correctly held that the fact finder is the proper body to determine whether complicity is established when a plaintiff shares an evening of drinking with the person who becomes intoxicated and injures the plaintiff. *E.g., Kennedy v. Bobbie & Clyde's, Inc.* (1992), 227 Ill. App. 3d 856 (reversing summary judgment in favor of dramshop where evidence was unclear as to amount of time plaintiff and inebriate spent together, amount of liquor consumed, and whether they paid for their own drinks or took turns buying "rounds"); *Darguzas v. Robinson* (1987), 162 Ill. App. 3d 362 (affirming judgment on jury verdict in favor of plaintiff, who had been beaten by intoxicated person following an evening of drinking and card playing); *Merritt v. Chonowski* (1978), 58 Ill. App. 3d 192 (summary judgment improperly entered against

plaintiff, who had consumed multiple alcoholic beverages at several locations).

We note that the judicially created doctrine of complicity may be inconsistent with the legislative scheme of placing the economic burden of intoxication-related injuries on dramshops. Liability under the Dramshop Act has been termed "*sui generis* and exclusive." (*Hopkins v. Powers* (1986), 113 Ill. 2d 206, 211 (holding that under the terms of the Contribution Act, "liab[ility] in tort" did not include liability under the Dramshop Act).) The legislature has imposed significant restrictions on dramshop liability, such as limiting the amount of damages recoverable by injured parties. (236 ILCS 5/6—21(a) (West 1992).) Over time, the Act has been amended on several occasions, resulting in such changes as the elimination of punitive damages and the imposition of relatively short statutes of limitation. (See *Nelson*, 69 Ill. 2d at 539-41; see also 235 ILCS Ann. 5/6—21, Historical & Statutory Notes, at 294-96 (Smith-Hurd 1993).) The legislature has not amended the Act to adopt a defense based on a plaintiff's complicity. The only class of claimants in the statute who are expressly barred from maintaining an action for damages are the inebriated persons whose conduct leads to their own injuries. 236 ILCS 5/6—21(a) (West 1992).

At the time *Nelson* was decided, Illinois did not recognize comparative negligence and apportionment of damages. (See *Alvis v. Ribar* (1981), 85 Ill. 2d 1.) Under the law existing at the time of the *Nelson* decision, plaintiffs were required to plead and prove their freedom from contributory negligence before they could recover damages for their injuries in negligence actions. Whether or not the *Nelson* court perceived that a rule of contributory negligence would be unduly harsh in the context of "no-fault" dramshop actions, the court rejected a negligence analysis of the complicity doctrine

and instead fashioned a rule of causation that permitted the finder of fact to assess the plaintiff's "active" contribution to or procurement of the intoxication of the person who caused the plaintiff's injuries. Such a rule, we believe, adequately preserves a plaintiff's ability to recover dramshop damages in accordance with the policy of the Dramshop Act.

We note that courts in some jurisdictions have rejected the complicity doctrine as a defense to dramshop actions, reasoning that the objectives of dramshop statutes would be defeated if dramshop operators could shift liability to patrons drinking with the inebriate (*Aanenson v. Bastien* (N.D. 1989), 438 N.W.2d 151, 161; see also *McIsaac v. Monte Carlo Club, Inc.* (Ala. 1991), 587 So. 2d 320). Other jurisdictions treat the plaintiff's contribution to the inebriate's intoxication under principles of comparative negligence (*Lee v. Kiku Restaurant* (1992), 127 N.J. 170, 603 A.2d 503; see also *Robbins v. McCarthy* (Ind. App. 1991), 581 N.E.2d 929). At least one court has held that a plaintiff's contributory negligence and complicity are not defenses to dramshop liability, whereas assumption of the risk is a valid affirmative defense. (*McIsaac v. Monte Carlo Club, Inc.*, 587 So. 2d 320.) Although these cases from other States illustrate different approaches to the complicity concept, each jurisdiction interprets its own statutory and decisional law and therefore these cases provide little assistance to this court.

As in other types of fact-based adjudications, judgment as a matter of law may be entered for either the plaintiff or the defendant under appropriate circumstances. Complicity is an affirmative defense (*Goodknight v. Piraino* (1990), 197 Ill. App. 3d 319, 328) for the dramshop defendant to plead and prove by the preponderance of the evidence. (See 735 ILCS 5/2—613(d) (West 1992).) If defendant is unable to present sufficient evi-

dence to demonstrate that plaintiff's conduct *actively contributed to or procured* the inebriate's intoxication, the complicity defense should not be submitted to the jury. The nonexistence of complicity is for judicial determination. Where the material facts establishing plaintiff's procurement of the inebriate's intoxication are undisputed and capable of only one conclusion, summary judgment or directed verdict for the defendant dramshop is appropriate. (See *Foley v. Stoned Toad, Inc.* (1979), 77 Ill. App. 3d 892, 894 (holding that evidence of plaintiff's complicity was conclusively established by her admission that, after observing inebriate drink at least six beers in a tavern, she accepted a ride from him and passed him four or five beers during the drive, opening them for him because "[h]e was having enough trouble trying to drive").) However, where the evidence of plaintiff's role in the inebriate's drinking is disputed, or capable of more than one inference regarding the material and active nature of plaintiff's conduct, the issue should be submitted to the fact finder.

Because the existence of complicity will depend on the specific facts of each case, we refrain from assigning general factors to be used in the analysis. In the past, some courts have placed too much reliance on such matters as the plaintiff's accompanying the inebriate to several locations ("tour of taverns") or buying the inebriate one or more drinks. The presence of one or more of these "factors" often led to the judicial determination that the dramshop was entitled to judgment as a matter of law. We caution the courts against placing too much weight on any particular aspect of a plaintiff's conduct, such as buying "rounds" of drinks. (See *Aanenson v. Bastien*, 438 N.W.2d at 156 (stating that "it would be an absurd result if alcoholic beverage dealers could avoid liability for illegal sales to intoxicated customers depending upon whether the customers paid for their

own drinks or took turns paying for each others drinks").) In cases where the facts are disputed or where reasonable minds can differ as to the active and material nature of plaintiff's procurement of the inebriate's intoxication, the resolution of the complicity defense to dramshop liability should be left to the trier of fact.

In the instant case, the circuit court did not err in submitting the issue of plaintiff's complicity in Shelton's intoxication to the jury. Assessing the evidence, the jury found in favor of plaintiff. In the jury's view, therefore, Carriage House did not sustain its burden of proof on its factual defense. The record in the case at bar reveals that plaintiff was in the presence of Shelton, in a social setting, for several hours. Dinner and musical entertainment were part of the evening's activities. Shelton consumed a significant amount of alcohol, most of which he bought for himself. Plaintiff paid for only one drink consumed by Shelton. Plaintiff accepted a few beers purchased by Shelton during the evening, but the record does not disclose that plaintiff in any manner encouraged Shelton to drink or served him intoxicating beverages. The record supports the jury's conclusion that plaintiff did not cause Shelton's inebriation or actively encourage him to drink to the point of intoxication. Accordingly, we hold that the circuit court properly denied Carriage House's motions for directed verdict on the issue of plaintiff's complicity.

II

Carriage House next argues that it was denied a fair trial because the court refused to sever plaintiff's battery action against Shelton from plaintiff's dramshop action against Carriage House. Shelton did not contest his liability or appear for trial. The record contains a notarized letter he sent to the trial court, following plaintiff's service of summons upon him. In the letter he explained that he was incarcerated in Illinois and would

be unable to appear at the trial. He added that he could not afford to pay for legal representation. The record further reflects that, before trial, an investigator for Carriage House learned Shelton had moved to Florida upon his release from prison. The investigator telephoned Shelton to arrange for his deposition but found Shelton to be "very uncooperative." Carriage House did not secure Shelton's deposition or subpoena him for trial.

According to Carriage House, the trial court should have granted its oral motion to sever trial of the two counts of plaintiff's complaint so the jury would not hear the evidence of Shelton's alleged battery of plaintiff. However, Carriage House fails to articulate a legitimate reason in support of its request for severance. Even if the battery count of plaintiff's complaint were severed from the dramshop count, plaintiff would have been entitled to present evidence of Shelton's violent conduct following his intoxication because that conduct and resulting injury formed the basis for plaintiff's claim for damages under the Dramshop Act. The facts surrounding plaintiff's physical injuries were relevant to both counts of the complaint and could not have been suppressed by Carriage House.

Carriage House concedes it has been "unable to locate any reported cases dealing with the instant factual issues of a motion for severance based on the absence of a codefendant." However, Carriage House insists that it was denied a fair trial because "plaintiff's tactic of keeping Shelton in the case was for the sole purpose of using Shelton's party status as a means of introducing prejudicial, hearsay testimony."

Carriage House argues that it was materially prejudiced by the introduction into evidence of Shelton's statements as "party admissions." Initially, Carriage House fails to specify which statements it believes would

have been excluded from trial as inadmissible hearsay if the cause of action against Shelton had been severed from the cause of action against the dramshop. Plaintiff, in his brief, describes two statements attributed to Shelton: "Sit right down," which Shelton allegedly said to plaintiff at the lounge at the Carriage House Hotel, and "I will kill you," allegedly made during Shelton's beating of plaintiff. The record indicates that the trial judge overruled Carriage House's hearsay objection to both statements. Although the court did not state the specific ground for its evidentiary rulings in these instances, plaintiff's counsel responded to Carriage House's objection to Shelton's alleged threat by stating that such statement was not offered to prove the truth of the matter asserted. Because Carriage House fails to establish that the statements were erroneously admitted or materially prejudiced its defense to the dramshop action, we decline further discussion of these two statements.

In a related argument, Carriage House contends that Shelton's absence at trial prejudiced Carriage House's defense to the dramshop action because the jury likely viewed "Shelton's absence as an admission of guilt by silence. Defendant Carriage House was denied the opportunity to probe Shelton for his explanations on the relevant issues for the defense of Carriage House, but at the same time defendant Carriage House had no defense to any of the proffered hearsay statements by Shelton because Shelton was not available for cross-examination by defendant Carriage House." This argument fails because Carriage House could have moved for a continuance of the trial or issuance of a subpoena to secure Shelton as a material witness, if Carriage House had thought it necessary. Carriage House made no showing or offer of proof to explain the manner in which Shelton's testimony or presence might have been favorable

to Carriage House. Its own investigator apparently found Shelton to be uncooperative.

We conclude that the trial court did not err in denying Carriage House's motion for severance. In *Wiedow v. Carpenter* (1941), 310 Ill. App. 342, the court found no error in the joinder of the dramshop action with the common law action against the alleged intoxicated person. In the instant case, Carriage House fails to demonstrate that the court's denial of its motion to sever resulted in material prejudice to Carriage House.

Finally, Carriage House cites additional instances of alleged error, stemming from the "improper joinder of the common law defendant" with the dramshop defendant. This argument is directed at certain IPI instructions, which Carriage House contends might have misled the jury. The jury was clearly instructed to consider "each defendant's case separately as if it was a separate lawsuit. Each defendant's case must be governed by the instructions applicable to that case." (See IPI Civil 2d No. 41.03 (given as defendants' Instruction No. 14).) The defendants were individually named in the instructions pertinent to their cases. The verdict forms were unambiguous and directed the jury to name the defendant or defendants against whom liability was found or to find against plaintiff and in favor of either or both defendants. Accordingly, we reject Carriage House's attempts to ascribe error to the fact that the jury considered plaintiff's claims against both defendants in the same trial.

For the reasons stated, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.

JUSTICE MILLER, specially concurring:

I join in the judgment of the court.

The complicity doctrine is analogous to the former recovery-defeating rules of contributory negligence and assumption of the risk. Accordingly, reassessment of the doctrine may now be appropriate in the wake of the recognition of comparative fault principles by the legislature and by this court. See 735 ILCS 5/2—1116 (West 1992); *Alvis v. Ribar* (1981), 85 Ill. 2d 1; *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104; see also *Robbins v. McCarthy* (Ind. App. 1991), 581 N.E.2d 929; *Lee v. Kiku Restaurant* (1992), 127 N.J. 170, 603 A.2d 503.

The plaintiff, however, has not proposed that we modify or abolish the complicity defense; the dispute before us concerns only the application of the doctrine, in its traditional form, to the facts of this case. In the absence of a request by the parties for reexamination of the complicity doctrine, with full briefing and argument, we should be reluctant to undertake that task.

In any event, it may well be that the legislature, and not this court, is the proper body to effect any changes in the doctrine. Complicity, originally a judicial creation, has coexisted with the Dramshop Act for more than a century. (*Nelson v. Araiza* (1978), 69 Ill. 2d 534, 541-43.) The Act has undergone numerous amendments during that period, yet the legislature has never rejected the doctrine. From this lengthy history we may conclude that the legislature has acquiesced in the court's construction of the statute, and that the complicity doctrine has by now become part of the fabric of the Dramshop Act. (See *Miller v. Lockett* (1983), 98 Ill. 2d 478, 483.) In light of the near statutory status of the complicity doctrine, if further development of the doctrine is to occur, such action is more properly the work of the legislature than of the judiciary.

JUSTICE FREEMAN joins in this special concurrence.

CHIEF JUSTICE BILANDIC, concurring in the judgment:

I agree with the lead opinion except for its suggestions that the complicity doctrine "lack[s] *** a clear analytical basis," is "difficult to discern" from contributory negligence, is difficult to apply, and "may be inconsistent with [the Dramshop Act]." (164 Ill. 2d at 89, 93.) These criticisms, although mere *dicta*, are unwarranted for the reasons explained below.

First, this court in *Nelson v. Araiza* (1978), 69 Ill. 2d 534, articulated the history of the Dramshop Act and the basis for the complicity doctrine. The original Dramshop Act of 1872 was a product of the temperance movement and was designed to promote temperance by curtailing the liquor trade. (*Nelson*, 69 Ill. 2d at 538; see 235 ILCS 5/1—2 (West 1992) (the promotion of temperance remains a stated purpose of the current act).) Liability under the Dramshop Act has never been predicated on negligence or fault. (*Nelson*, 69 Ill. 2d at 539.) Rather, the Act imposes "no-fault liability" upon dramshops for selling or giving alcoholic beverages to their patrons who subsequently injure third parties. (*Nelson*, 69 Ill. 2d at 538.) To further the purposes of the Dramshop Act, the courts developed the complicity doctrine. (See *Nelson*, 69 Ill. 2d at 538-39.) The rule of complicity is that "one who actively contributes to or procures the intoxication of the inebriate is precluded from recovery." (*Nelson*, 69 Ill. 2d at 543.) The reason for the rule is that, if a plaintiff were allowed to recover in these instances, the Dramshop Act's stated purpose of promoting temperance would be undermined. *Nelson*, 69 Ill. 2d at 538-39.

Second, the *Nelson* court also explained the distinction between contributory negligence and complicity,

and how they apply to the Dramshop Act. Both doctrines are "children" of the principle that a person should not profit from his or her own wrong. (*Nelson*, 69 Ill. 2d at 539.) Contributory negligence, however, had absolutely no application to the Dramshop Act because the Act is not based on a negligence theory. (*Nelson*, 69 Ill. 2d at 539.) Only the rule of complicity can interdict recovery under the Dramshop Act. Complicity simply focuses on the plaintiff's role in causing the inebriate's intoxication. *Nelson*, 69 Ill. 2d at 539.

Third, the complicity doctrine has not proved difficult to apply. Courts that have followed the complicity rule as set forth in *Nelson* have properly applied the doctrine to the cases before them. (See, *e.g.*, *Kennedy v. Bobbie & Clydes, Inc.* (1992), 227 Ill. App. 3d 856; *Darguzas v. Robinson* (1987), 162 Ill. App. 3d 362; *Merritt v. Chonowski* (1978), 58 Ill. App. 3d 192.) As noted in the lead opinion, those appellate decisions that have misapplied the doctrine were improperly relying on pre-*Nelson* precedent. 164 Ill. 2d at 90-94 (discussing *Lewis v. Champaign County VFW Post No. 5520* (1989), 187 Ill. App. 3d 73, *Sterenberg v. Sir Loin, Inc.* (1989), 183 Ill. App. 3d 631, and *Parsons v. Veterans of Foreign Wars Post 6372* (1980), 86 Ill. App. 3d 515).

Lastly, I disagree with the statement that the complicity doctrine "may be inconsistent with the legislative scheme of placing the economic burden of intoxication-related injuries on dramshops." (164 Ill. 2d at 93.) The General Assembly has amended the Dramshop Act several times over the years (see 235 ILCS 5/6—21, Historical & Statutory Notes, at 294-96 (Smith-Hurd 1993)), but has never altered the complicity rule as set forth by this court. Where the legislature chooses not to amend a statute after a judicial construction, it is presumed to have acquiesced in the court's statement of legislative intent. (*Miller v. Lockett* (1983), 98 Ill. 2d 478,

483.) The judicial construction then becomes a part of the statute itself. Consequently, the complicity doctrine must now be regarded as an integral part of the Dramshop Act, consistent with legislative intent. Accordingly, any change to the settled rule of complicity should emanate from the legislative, and not the judicial, branch of government.

I therefore concur except as noted.

JUSTICE NICKELS joins in this concurrence.

JUSTICE HEIPLE, dissenting:

The essential facts in this case are undisputed. They are well set forth in the foregoing judgment of the court. Likewise, as to the applicable law. My disagreement with the court's judgment is the conclusion that has been reached in applying the law to the facts.

In refusing to set aside the verdict, the court is giving mere lip service to the oft-quoted standard for deciding when directed verdicts and judgments *n.o.v.* should be granted. That is so because the evidence of complicity here is overwhelming. The effect of this decision is to give *carte blanche* to the trier of fact in a dramshop case. That should not be. Dramshop cases should be subject to the same even-handed standards as are applied in any other case.

Other members of this court have suggested that legislative action is needed. With that suggestion, I also disagree. The doctrine of complicity is a judicially created doctrine. Any attempt to explicitly define the doctrine would either leave something out or say too much. Ideally, the doctrine should be given a commonsense meaning and allowed to evolve on a case-by-case basis. Such is the nature of the common law.

Accordingly, I respectfully dissent.