Randi J. ROBBINS, Appellant–Plaintiff,

v.

Joe L. McCARTHY, Appellee–Defendant.

No. 30A01–9105–CV–138.

Court of Appeals of Indiana,
First District.

Nov. 19, 1991.

Rehearing Denied Jan. 6, 1992.

Brent E. Clary, Roger Wm. Bennett, Bennett, Boehning, Poynter & Clary, Lafayette, for appellant-plaintiff.

Stephen J. Peters, William N. Ivers, Stewart & Irwin, Indianapolis, for appellee-defendant.

ROBERTSON, Judge.

Randi J. Robbins appeals the entry of a summary judgment in favor of Joe L. McCarthy in Robbins' action against McCarthy for injuries Robbins sustained as a passenger in McCarthy's automobile. Among other things,[1] Robbins alleged in his complaint that McCarthy operated a vehicle while under the influence of alcohol and that, by drinking and driving, McCarthy exhibited negligence consisting of reckless and willful disregard for the rights, safety and welfare of the public and Robbins. Robbins prayed for compensatory and punitive damages.

Succinctly stated, McCarthy placed before the trial court, and now argues before this court, two distinct theoretical bases for a summary judgment in his favor on the issues of liability and punitive damages: first, that Robbins' complicity in McCarthy's drinking and driving precludes Robbins from recovering either compensatory or punitive damages as a matter of law; second, as to liability, that by incurring the risk of injury and negligently contributing to the risk of injury, Robbins' fault exceeded 50% as a matter of law; and lastly, as to punitive damages, that the uncontroverted fact McCarthy received criminal punishment for his actions precludes Robbins from recovering exemplary damages as a matter of law.

In reviewing the propriety of a ruling on summary judgment, we apply the same standard applicable in the trial court. We must consider the pleadings and evidence sanctioned by Ind. Trial Rule 56(C) without deciding its weight and credibility. "Rational assertions of fact and reasonable inferences therefrom are deemed to be true." *Burke v. Capello* (1988), Ind., 520 N.E.2d 439, 440. Any doubt about the existence of a fact or the inference to be drawn from it is to be resolved in favor of the non-moving party. *Gaboury v. Ireland Road Grace*

*Bretheren, Inc.* (1983), Ind., 446 N.E.2d 1310, 1313. Only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law should summary judgment be granted. Ind. Trial Rule 56; *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1234.

## I.

### Complicity

■ The first ground asserted by McCarthy as a basis for summary judgment is what is referred to in other states as the doctrine of complicity. In essence, McCarthy maintains that he owed no duty to Robbins because Robbins contributed to, procured, encouraged or willfully participated in his negligent driving while intoxicated. McCarthy also argues the doctrine of complicity as an affirmative defense, separate and distinct from contributory negligence. He asserts that because the doctrine of complicity is not specifically referred to in the definition of fault contained in Indiana's Comparative Fault Act, Ind.Code 34–4–33–1, the notion of complicity falls within the legislation's exclusion of intentional act; and, because recovery by one who engages in complicity with an inebriated driver would be unjust and incongruent as a matter of policy, the defense is not and should not be governed by comparative fault principles. Also, as a matter of public policy, Robbins should be precluded from recovering punitive damages because of his complicity.

McCarthy relies primarily upon cases from other jurisdictions to define the bounds of complicity, for only one reported Indiana decision, *Greener v. Nielhaus* (1909), 44 Ind.App. 674, 89 N.E. 377, reflects the existence of such a doctrine in Indiana. The cited decisions[2] either apply

---

**1.** Robbins also alleged that McCarthy was negligent and at fault in failing to keep a proper lookout, failing to remain within his driving lane, failing to control his vehicle and failing to comply with driving regulations applicable in the State of Indiana. Neither party has addressed the merits of a summary judgment on the issues raised by these allegations.

**2.** *Sterenberg v. Sir Loin, Inc.* (1989), 183 Ill. App.3d 631, 131 Ill.Dec. 941, 539 N.E.2d 294, *appeal denied; Reeves v. BRNO, Inc.* (1985), 138 Ill.App.3d 861, 93 Ill.Dec. 304, 486 N.E.2d 405,

a judicially-created exception to a commercial supplier's strict liability under dram shop legislation[3] where the plaintiff is guilty of complicity with a person licensed to sell liquor who by selling or giving it away causes an inebriate's intoxication, or, construe the jurisdiction's dram shop legislation as protecting only a limited class of plaintiffs. Although we cannot discern from the *Greener* decision the exact rationale for such a principle in Indiana, the doctrine evolved in other jurisdictions from the notion that a suitor should be innocent. To allow one guilty of complicity in distributing liquor to recover from the commercial supplier would undermine the very purpose of dram shop legislation which is to control the abuses of the liquor trade. *See, e.g., Nelson v. Araiza* (1977), 69 Ill.2d 534, 14 Ill.Dec. 441, 372 N.E.2d 637. The principles contained in the instructions in *Greener* appear to have had the same theoretical genesis.

Of the decisions cited by McCarthy, not one extends the defense beyond its original scope to actions based upon common law negligence between the inebriate and complicitor, *see e.g. Nelson*, 372 N.E.2d at 639 (Dram Shop Act not predicated upon negligence); *Slager v. HWA Corp.* (1989), Iowa, 435 N.W.2d 349, 354, 356 (Dram shop statute created cause of action unrelated to and different from any other; defense unique to legislation). Each jurisdiction

treats the doctrine as an affirmative defense, not as a matter effecting duty.[4] Inasmuch as the decisions cited by McCarthy are not worthy precedent for applying the doctrine in any context other than in an action brought pursuant to dram shop legislation, the practice of other jurisdictions does not lend sufficient reason for utilizing the doctrine as an affirmative defense in the present setting. What's more, *Greener*'s applicability should be confined to the facts of the case in the absence of any indication that the doctrine existed at common law as anything other than a defense to a statutory cause of action since repealed by the legislature.

McCarthy argues nonetheless that the trial court correctly ruled upon his summary judgment motion because as a matter of public policy, McCarthy owed no duty to Robbins, a plaintiff who aided in his defendant's intoxication. We are not convinced, however, that policy considerations justify removing the issues raised by the parties' conduct from the jury. If the prevention of harm caused by drinking and driving is the central goal of Indiana's dram shop legislation and tort law on this subject, as McCarthy argues, what *additional* social utility is gained by a judicial decree to the effect that participation in another's drinking operates as a complete bar to recovery from an intoxicated driver? While such a ruling might deter future plaintiffs from

*appeal denied; Foley v. Stoned Toad, Inc.* (1979), 77 Ill.App.3d 892, 33 Ill.Dec. 307, 396 N.E.2d 834; *Nelson v. Araiza* (1978), 69 Ill.2d 534, 14 Ill.Dec. 441, 372 N.E.2d 637; *Slager v. HWA Corp.* (1989), Iowa, 435 N.W.2d 349; *Martin v. Heddinger* (1985), Iowa, 373 N.W.2d 486; *Herrly v. Muzik* (1985), Minn., 374 N.W.2d 275; *Kangas v. Suchorski* (1964), 372 Mich. 396, 126 N.W.2d 803; *Plamondon v. Matthews* (1985), 148 Mich. App. 737, 385 N.W.2d 273; *Vandenburg v. Brosnan* (1987), 129 A.D.2d 793, 514 N.Y.S.2d 784, *appeal granted by* (1987), 70 N.Y.2d 603, 518 N.Y.S.2d 1025, 512 N.E.2d 551, *order affirmed by* 70 N.Y.2d 940, 524 N.Y.S.2d 672, 519 N.E.2d 618.

**3.** When *Greener* was decided, Indiana's dram shop legislation held the purveyor of alcohol personally liable without proof the purveyor knew the consumer to be intoxicated.

**4.** One of these decisions, *Vandenburg v. Brosnan* (1987), 129 A.D.2d 793, 514 N.Y.S.2d 784, also

declines to impose common law negligence liability upon dispensers of alcoholic beverages for injuries sustained by voluntarily intoxicated customers on the ground that a dispenser of alcohol owes no duty to protect the consumer from the results of the latter's voluntary intoxication. But an examination of the cases cited in support of this holding disclose that in New York, as a matter of law, excessive alcohol consumption is deemed to be the sole proximate cause of injuries produced by the inebriate; the selling or furnishing of alcohol to an adult who elects to become intoxicated is not the root of the resulting harm. Hence, the refusal to recognize a common law negligence cause of action by the inebriate is as much a limitation of liability generally as it is a question of duty. In Indiana, affirmative defenses have never been viewed as excusing a defendant's duty to exercise reasonable care. What is excused is the liability for failing to exercise the duty of reasonable care.

contributing to another's intoxication, no progress will have been made toward discouraging the driver's voluntary intoxication and operation of an automobile in that condition. Indeed, a driver who decides to become intoxicated may only be encouraged not to drink alone so as to escape all responsibility for his subsequent, willful and wanton actions. *See Kolkman v. Falstaff Brewing Corp.* (1987), Ind.App., 511 N.E.2d 478, 479, *trans. denied.* (Intoxicated driver is guilty of willful and wanton misconduct when he deliberately assumes control of an automobile and places it upon a public highway).

Moreover, the determination of public policy in this state is a task dedicated to our legislative bodies. Admittedly, there may be some injustice in an individual case in permitting an individual who has played an active role in another's intoxication to shift a share of the responsibility for his injuries to his joint tortfeasor. But what justice exists, were complicity to become a complete, judicially-created bar to recovery, for the plaintiffs who purchase a single drink for their companion-drivers? The enactment of a comparative fault statute which subjects a broad range of negligent conduct, even willful and wanton misconduct, to comparative treatment, *see* I.C. 34-4-33-2, reflects a legislative determination that "fairness" is best achieved by a relative assessment of the parties' respective conduct. Individual irresponsibility is simply not fostered by a jury which, when the circumstances warrant, refuses to protect a plaintiff whose active procurement of another's intoxication results in his own injury. There is thus no virtue in reviving an outmoded and often arbitrary judicial doctrine when the legislature, the arbiter of social policy, has indicated its clear intent to move toward a comprehensive method of comparative fault.

■ Neither do we find reason, in the fact that Robbins is not an entirely innocent party, to remove the consideration of an award of punitive damages from the jury. Punitive damages are not compensatory in nature but designed to punish the

*Get–N–Go, Inc. v. Markins* (1990), Ind., 550 N.E.2d 748, 751, *on rehearing.*

wrongdoer and dissuade him *and others similarly situated* from such conduct in the future. *Orkin Exterminating Co. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1022.

When the question of whether punitive damages should be given is considered, it must be done with the realization that the plaintiff has already been awarded all that he is entitled to receive as a matter of law. What, if anything, he may be given in addition is a windfall, and in making that decision all thoughts of benefitting the injured party should be laid aside and the sole issues are whether or not the defendant's conduct was so obdurate that he should be punished *for the benefit of the general public.*

*Traina,* 486 N.E.2d at 1022. (Emphasis supplied.) Like the issues created by a comparative analysis of fault, the issues produced by the punitive damages concept are inherently issues of degree; for example, was the defendant's conduct slightly negligent, negligent, very negligent, grossly negligent, wanton or heedless? *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 360. The jury is best capable of assessing these types of fact sensitive issues, particularly where as here the record shows room for disagreement about the extent of the wrongfulness of McCarthy's conduct.

For these reasons, it is our conclusion that societal concerns do not shift the balance in favor of judicial recognition that the interests of a complicit plaintiff are not entitled to protection from the harm caused at least in part by an inebriated driver, provided a relationship exists between the parties which would give rise to such a duty and the plaintiff is one who might reasonably be foreseen as being subject to injury by the defendant's breach of duty.[5] *See, e.g., Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992. Neither do we find any injustice in permitting a jury to assess the desirability of an award of punitive damages in the present situation.

■ Anticipating our determination that a duty does exist in favor of Robbins,

---

5. McCarthy does not argue these components of the duty equation.

McCarthy construes the definition of fault as all-inclusive and concludes that the legislature's failure to specifically name complicity as a doctrine brought under the fault umbrella removes the defense from the statute's purview. He cites a second statutory basis for treating Robbins' action as one governed by common law principles: intentional acts, such as Robbins' active participation in the intoxication of McCarthy, are expressing excluded from the definition of fault.

█ Even were we to assume that complicity remains a viable defense in Indiana, the behavior identified by the legislature as "fault" is sufficiently broad to incorporate this plaintiff's actions. "Fault" includes any act that is negligent, willful, wanton or reckless toward the person of the actor *or others,* but does not include an intentional act. I.C. 34-4-33-2. All forms of negligence, including willful and wanton behavior approaching intentional conduct, are plainly and expressly included. *Koske v. Townsend Engineering Co.* (1990), Ind., 551 N.E.2d 437, n. 5. Willful and wanton misconduct, sometimes described as "constructive willfulness," may consist of an intentional act done with reckless disregard of the natural and probable consequences of injury under the circumstances known to the actor at the time. *Witham v. Norfolk & Western Railway Co.* (1990), Ind., 561 N.E.2d 484, 486 (quoting *McKeown v. Calusa* (1977), 172 Ind.App. 1, 5, 359 N.E.2d 550, 553-54). Intentional acts not covered by the Act involve consequences desired or consequences which the actor believes are certain or substantially certain to follow. *Foster v. Purdue University* (1991), Ind. App., 567 N.E.2d 865, 869.

We are unable to conclude from the evidence offered upon McCarthy's motion for summary judgment that, by buying McCarthy drinks, intoxication was the desired consequence of Robbins' behavior or a consequence substantially certain to follow. Robbins' deposition does not show McCarthy to have consumed any liquor when Robbins purchased the first twelve-pack of Budweiser the evening preceding Robbins' injury. Of this purchase, McCarthy consumed "probably" three 12 oz. beers over a one to two hour period. Robbins' deposition shows only that sometime over the next two to three hours, Robbins purchased "some" canned beer for McCarthy at a drinking establishment. How much Robbins purchased for McCarthy, how much McCarthy had consumed at the time, and whether McCarthy's intoxication was substantially certain to follow from the quantity of alcohol procured for him by Robbins are questions of fact left unresolved by the designated portions of the record. Consequently, while one may conclude that Robbins intended to furnish McCarthy with alcohol, the inference that Robbins did so carelessly or in reckless disregard of his actions is simply not one which can be drawn as a matter of law from the record.

In sum, Robbins' involvement in the voluntary intoxication of driver McCarthy is not a defense to a negligence action. It does not relieve McCarthy of the duty to exercise reasonable care in the operation of a motor vehicle. It does not require the action to be treated as one governed by the common law of negligence nor provide justification for removing the issue of punitive damages from jury consideration. The trial court's entry of a summary judgment in favor of McCarthy cannot be sustained on the legal basis of complicity.

## II.

### Fault

█ Alternatively, McCarthy contends the trial court could have properly entered a summary judgment in his favor on the basis that Robbins' fault exceeded fifty percent as a matter of law. Citing cases which predominately predate the advent of comparative fault in Indiana, McCarthy points to evidence in the record which he maintains establishes Robbins' contributory negligence as a matter of law and demonstrates that Robbins incurred the risk of injury as a matter of law. In addition, the record shows Robbins' conduct to have been of the same class of negligence at common law as his own; hence, McCarthy argues Robbins' recovery is barred.

The primary objective of the Comparative Fault Act was to modify the harsh common law rule of contributory negligence by which a plaintiff only slightly negligent was precluded from the recovery of any damages even as against a highly culpable tortfeasor. *Indianapolis Power & Light Co. v. Snodgrass* (1991), Ind., 578 N.E.2d 669; *Bowles v. Tatom* (1989), Ind., 546 N.E.2d 1188, 1190. The proportional allocation of fault is the means by which the harshness of the common law is alleviated, not the end sought by the legislation. *Id.* Accordingly, the Act allows recovery if contributory fault of the plaintiff is found to be fifty percent or less, but reduces the plaintiff's damages in proportion to the extent his fault contributed. In this respect, substantive negligence law is modified. However, no change in negligence law occurs if a plaintiff's contributory fault exceeds fifty percent; in effect, contributory negligence remains a complete bar.

Therefore, common law characterizations of Robbins' conduct as contributorily negligent as a matter of law mean little in the context of comparative fault other than that Robbins must be assessed some proportion of his damages. The same is true of assumption or incurral of risk for that doctrine too is subsumed within the notion of fault. *See* I.C. 34-4-33-2. The suggestion that the proportion of fault attributable to a plaintiff may somehow be aggravated by a showing that the plaintiff's conduct meets the requirements of both common law defenses evinces only that a single fact situation may give rise to what at common law would have been alternative theories for denying completely any recovery. *See Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 379 N.E.2d 1004, 1012. Neither defense was ever intended to offer a test for comparing the conduct of the plaintiff with that of the defendant. Indeed, it was this void in substantive common law which inherently created inequity and brought this state to comparative fault.

The classification of Robbins' conduct as reckless, willful or wanton is equally unavailing. At common law, the elevation of a plaintiff's behavior to the same class as the defendant's barred any recovery. *See, e.g., Pierce v. Clemens* (1943), 113 Ind.App. 65, 79, 46 N.E.2d 836; Restatement (Second) of Torts § 503 (1977). But the legislature's express inclusion of reckless, willful or wanton conduct within the definition of fault indicates that the legislature intended to preempt the field just as it did with contributory negligence and assumption or incurral of risk and eliminate the concept that certain degrees of negligence on the part of a plaintiff may operate as a complete bar. In addition, it indicates clearly the legislature's intent that conduct of both plaintiff and defendant which can be said to be reckless, willful or wanton should be compared as is simple negligence.

We acknowledge that at some point the apportionment of fault may become a question of law for the court. But that point is reached only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion. *Walters v. Dean* (1986), Ind.App., 497 N.E.2d 247, 254. In our view, this record does not permit such a conclusion. Without doubt, Robbins knew of the dangers of drinking and driving and should have anticipated that McCarthy could become intoxicated during the evening and would not be able to provide him with a safe ride home. A jury could thus reasonably conclude that Robbins failed to exercise reasonable care for his own safety at some point in the evening. But, unlike McCarthy, who made a conscious decision to drive, a question of fact exists as to whether Robbins consciously, voluntarily and with a sense of venturousness, embarked upon the ride which led to his injury. The record reflects that Robbins lost consciousness after hearing the bartender's last call and did not awaken until some time later in the hospital. Consequently, while we agree that Robbins' self indulgence should not and does not relieve him of responsibility for his injury, McCarthy's conscious decision to drive in an impaired condition and to undertake responsibility for Robbins' safety is a basis upon which the jury might logically differentiate between the conduct of the two parties and apportion equal or greater fault to McCarthy. In any event, the

record does not show the misconduct of the parties to be so disproportionately weighted against recovery as to compel the sole conclusion that Robbins bore better than fifty percent of the fault. The apportionment of fault under these circumstances should therefore be left for the jury.

### III.

#### Punitive Damages

Lastly, McCarthy contends that summary judgment was appropriately entered on the issue of punitive damages because his criminal conviction and punishment bars such an award. McCarthy concedes that in 1984, the Indiana legislature modified the common law rule which precluded the imposition of punitive damages when the defendant was either subject to criminal prosecution or received criminal punishment, but argues that by use of the language "subject to criminal prosecution" in I.C. 34-4-30-2, the legislature did not intend to modify that portion of the common law rule which barred punitive damages when a defendant had actually undergone criminal prosecution and punishment.

This court has twice interpreted I.C. 34-4-30-2 to mean possible or actual subjection to prosecution and has held that a criminal conviction and sentence is not a defense to a claim for punitive damages. *Whittaker v. Dail* (1991), Ind.App., 567 N.E.2d 816; *Blankenship v. McKay* (1989), Ind.App., 534 N.E.2d 243, 245. While these decisions do not specifically address all possible arguments against such an interpretation, they nonetheless constitute binding precedent.[6] McCarthy was not entitled to a summary judgment on the issue of punitive damages either.

Judgment reversed.

RATLIFF, C.J., and BUCHANAN, J., concur.

---

**6.** For a thorough discussion of double jeopardy considerations and the rule at common law, see *Eddy v. McGinnis* (1988), Ind., 523 N.E.2d 737.