**Michael N. GRAY, Appellant,**

v.

**D & G, INC. d/b/a The Sandstone, Appellee.**

No. 29A04–1002–CT–113.

Court of Appeals of Indiana.

Dec. 3, 2010.

Barry Herndon, Ryan Frasher, The Frasher Law Firm, P.C., Indianapolis, IN, Attorneys for Appellant.

Thomas E. Rosta, Metzger Rosta LLP, Noblesville, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Michael Gray ("Gray") appeals the Hamilton Superior Court's grant of summary judgment in favor of D & G, Inc. d/b/a The Sandstone Bar & Grill ("Sandstone") in Gray's negligence action against Sandstone. We reverse and remand.

### Facts and Procedural History

On July 17, 2007, Gray went to the Sandstone bar. There, he ate lunch and drank alcohol throughout the day. There is a dispute as to precisely how much alcohol Gray consumed, but Gray bought drinks for himself and friends, and friends bought drinks for Gray. It is undisputed, however, that Gray continued to consume alcohol until the bar closed at approximately 1:00 a.m. the following morning. The bartender on duty that night was Vanessa Jave ("Jave"), who was Gray's girlfriend. Gray and Jave had planned for Jave to drive Gray to another bar after the Sandstone closed.

At around 11:00 p.m. that night, Gray's friend, Ismar Diaz ("Diaz"), met Gray at the bar, and the two discussed Gray's motorcycle. Gray was initially hesitant to drive the motorcycle while Jave was present. But as the Sandstone was closing, Diaz and Gray went outside while Jave remained inside working. Once outside, Gray decided to drive his motorcycle. As he went through an intersection, Gray struck a curb and lost control of his motorcycle. Gray wrecked the motorcycle and was injured as a result, but there were no other injuries or damages to any third party.

On January 17, 2008, Gray filed a complaint against Sandstone,[1] arguing that Sandstone was liable under the Dram Shop Act.[2] On May 5, 2009, Sandstone filed a motion for summary judgment arguing that it did not have actual knowledge of Gray's intoxication, that Sandstone's actions were not the proximate cause of Gray's injuries, and that Gray was voluntarily intoxicated. On December 29, 2009, the trial court entered summary judgment in favor of Sandstone. The trial court concluded that genuine issues of material fact existed as to whether Sandstone had actual knowledge of Gray's intoxication and as to whether Sandstone's actions were the proximate cause of Gray's injuries, but also concluded that Gray's voluntary intoxication precluded any recovery. Gray now appeals.

**Discussion and Decision**

■ Gray claims that the trial court erred in granting summary judgment in favor of Sandstone, contending that the trial court improperly determined that Gray could not bring suit under the Dram Shop Act due to his voluntary intoxication.

As we explained in *Florian v. GATX Rail Corp.*, 930 N.E.2d 1190 (Ind.Ct.App.2010):

> A party is entitled to summary judgment upon demonstrating the absence of any genuine issue of fact as to a determinative issue unless the non-moving party comes forward with contrary evidence showing an issue of fact for trial. An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the nonmoving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. But a *de novo* standard of review applies where the dispute is one of law rather than fact.

*Id.* at 1194 (quoting *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 185–86 (Ind. 2010)). Here, the parties present a question of statutory interpretation, which we review *de novo*. *See id.*; *see also Cotton v. Ellsworth*, 788 N.E.2d 867, 869 (Ind.Ct. App.2003).

With regard to statutory interpretation, we have explained:

> The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question. If a statute is unambiguous, we must give the statute its clear and plain meaning. A statute is unambiguous if it is not susceptible to more than one interpretation. However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to

---

1. Gray initially filed suit against Diaz claiming negligent entrustment, but Diaz was later dismissed as a defendant by agreement of the parties.

2. Ind.Code § 7.1–5–10–15.5 (2005).

effectuate that intent. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results.

*Nieto v. Kezy*, 846 N.E.2d 327, 335 (Ind.Ct. App.2006) (citations omitted).

Our primary goal in statutory construction is to ascertain and give effect to the intent of the legislature. *Hannis v. Deuth*, 816 N.E.2d 872, 876 (Ind.Ct.App. 2004). "The best evidence of legislative intent is the language of the statute itself, and we must give all words their plain and ordinary meaning unless otherwise indicated by statute." *Id.* We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Id.* In construing a statutory provision, we will assume that the legislature did not enact a useless provision. *Id.* Therefore, when possible, every word is to be given effect and no part of the statute is to be construed so as to be meaningless if it can be reconciled with the rest of the statute. *Id.*

Gray claims that the trial court erred in concluding that he cannot bring suit under the Dram Shop Act because of his voluntary intoxication. We therefore turn first to the statutory language itself. The Dram Shop Act provides as follows:

(a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide, or give away.

(b) A person who furnishes an alcoholic beverage to a person *is not liable* in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage *unless:*

(1) the person furnishing the alcoholic beverage had *actual knowledge* that the person to whom the alcoholic beverage was furnished was visibly intoxicated *at the time the alcoholic beverage was furnished; and*

(2) the *intoxication* of the person to whom the alcoholic beverage was furnished *was a proximate cause* of the death, injury, or damage alleged in the complaint.

(c) If a person who is at least twenty-one (21) years of age suffers injury or death proximately caused by the person's voluntary intoxication, the:

(1) person;

(2) person's dependents;

(3) person's personal representative; or

(4) person's heirs;

may not assert a claim for damages for personal injury or death against a person who furnished an alcoholic beverage that contributed to the person's intoxication, unless subsections (b)(1) and (b)(2) apply.

Ind.Code § 7.1–5–10–15.5 (2005).

■ The parties disagree as to whom subsection (c) refers by use of the term "person." We think it clear that the first paragraph of subsection (c) refers to only one "person." That person must be at least twenty-one years of age and suffer injury or death proximately caused by that person's *own* voluntary intoxication. The person who is injured is the same as the person who is voluntarily intoxicated under this statute. We cannot read this part of subsection (c) to mean, as Sandstone appears to do, to refer to two different persons, i.e. one who is injured and another who is voluntarily intoxicated. To us, it is clear by the ordinary meaning of the language used in subsection (c) that the first use of the word "person" refers to the person who is voluntarily intoxicated.

Thus, subsection (c) provides that a person ("the consumer") who is at least twenty-one years old and who suffers injury

that is caused by the consumer's own voluntary intoxication may *not* assert a claim of damages against the person ("the provider") who furnished an alcoholic beverage that contributed to the consumer's intoxication unless subsections (b)(1) and (b)(2) apply. From this, it follows that if subsections (b)(1) and (b)(2) do apply, a voluntarily intoxicated adult consumer who suffers injury caused by his own voluntary intoxication *may* assert a claim of damages against a provider who furnished an alcoholic beverage that contributed to the consumer's intoxication.

▉ In other words, an adult consumer who is voluntarily intoxicated may assert a claim of damages for personal injury against the provider who furnished an alcoholic beverage that contributed to the consumer's voluntary intoxication if: (1) the provider had actual knowledge that the consumer was visibly intoxicated at the time the beverage was furnished, and (2) if the consumer's intoxication was a proximate cause of the injury or damage alleged.

Here, the trial court specifically found that there were genuine issues of material fact with regard to whether Sandstone had actual knowledge that Gray was visibly intoxicated and to whether Gray's intoxication was a proximate cause of Gray's injuries. Nevertheless, the trial court entered summary judgment in favor of Sandstone because it concluded that Gray should not be able to recover because he was voluntarily intoxicated, citing the public policy concerns as addressed by this court in *Bailey v. State Farm Mutual*

*Automobile Insurance Co.,* 881 N.E.2d 996 (Ind.Ct.App.2008). In *Bailey,* we held that there was no first-party cause of action for negligent entrustment of a motor vehicle to a voluntarily intoxicated person. However, *Bailey* addressed only the common-law tort of negligent entrustment, not the interpretation of the Dram Shop Act. And the Dram Shop Act, by its text, clearly allows for recovery by one who is voluntarily intoxicated, so long as the provider of the alcoholic beverages had actual knowledge that the consumer was visibly intoxicated at the time the beverage was furnished and if the consumer's intoxication was a proximate cause of the injury or damage alleged.

Clearly, the trial court had concerns regarding the wisdom of a public policy determination that might permit an intoxicated person to recover for injuries that were caused by his own voluntary intoxication. We addressed similar public policy concerns in *Booker Inc. v. Morrill,* 639 N.E.2d 358, 361 (Ind.Ct.App.1994). There, the decedent's widow filed a wrongful death claim against a tavern after her husband was killed in a motor vehicle accident that occurred after he had become drunk at the tavern. On appeal of the trial court's judgment in favor of the widow, the tavern presented several claims of error. First, the tavern claimed that the decedent's act of driving while intoxicated constituted willful and wanton misconduct that precluded recovery. We disagreed and held that, under the comparative fault act,[3] "no degree of negligence on the part of the plaintiff, including that which may be char-

---

**3.** Cases decided prior to the comparative fault act had held that driving while intoxicated "constituted a complete defense to any action by the intoxicated driver against the provider of the alcohol consumed." *Id.* (citing *Kolkman v. Falstaff Brewing Corp.,* 511 N.E.2d 478, 479–80 (Ind.Ct.App.1987), *trans. denied; Davis v. Stinson,* 508 N.E.2d 65, 67–68 (Ind.Ct.App.1987), *trans. denied* ). *Merrill v.*

*Trump Indiana, Inc.,* 320 F.3d 729 (7th Cir. 2003), which Sandstone cites, relied on *Davis,* in concluding that, under Indiana law, "a patron who drives while intoxicated, causing his own injuries, cannot recover from the tavern that served him alcohol." *Id.* at 733 (citing *Davis,* 508 N.E.2d at 68). While this may have been true under the common-law doctrine of contributory negligence, this is no

acterized as willful and wanton, may operate to bar recovery." *Id.*; *see also* Ind. Code § 34–6–2–45(b) (1999) (defining "fault" for purposes of the comparative fault act to include "an act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others.").

The defendant tavern in *Booker* also claimed that "an intoxicated driver who injures himself should be precluded from recovery even after the advent of comparative fault as a matter of public policy." *Id.* at 361. Again, we disagreed and wrote:

> In *Robbins* [*v. McCarthy,* 581 N.E.2d 929, 932 (Ind.Ct.App.1991), *trans. denied*], this court rejected an argument that public policy should preclude recovery against an intoxicated driver by a passenger who encouraged the intoxication, noting that "the determination of public policy in this state is a task dedicated to our legislative bodies." The *Robbins* court observed that the enactment of a comparative fault statute which subjects a broad range of negligent conduct, even willful and wanton misconduct, to comparative treatment, reflects a legislative determination that fairness is best achieved by a relative assessment of the parties' respective conduct. *Id.* at 932. "There is . . . no virtue in reviving an outmoded and often arbitrary judicial doctrine when the legislature, the arbiter of social policy, has indicated its clear intent to move toward a comprehensive method of comparative fault." *Id.* In light of the legislature's express intention to include willful and wanton misconduct in the comparative fault analysis, a determination that the actions of an intoxicated driver who injures himself fall outside the scope of comparative fault would directly contravene that intention. Booker's public policy argument therefore must fail.

*Booker,* 639 N.E.2d at 361.[4]

■ Similarly, here, the General Assembly has made the public policy decision that even those who are voluntarily intoxicated may, under certain, limited and clearly-delineated circumstances, assert a claim for damages against a person who provided them with alcoholic beverages that contributed to the intoxication.[5] Were we to hold otherwise, we would effectively render subsection (c) a nullity. This we will not do. *See Hannis,* 816 N.E.2d at 876; *N. Ind. Bank & Trust Co. v. State Bd. of Fin.,* 457 N.E.2d 527, 532 (Ind.1983) ("It is a rule of statutory interpretation that courts will not presume the legislature intended to do a useless thing or to enact a statute that is a nullity.").

■ This interpretation is also consistent with the policy goal of the Act itself. "The Dram Shop Act represents a legislative judgment and the declared public policy of this state that providers of alcoholic beverages should be liable for the reasonably foreseeable consequences of knowing-

---

longer the law under the comparative fault scheme. *Booker,* 639 N.E.2d at 361.

**4.** *Booker* also rejected the tavern's claim that the decedent's actions were intentional and he could therefore not recover even under the comparative fault act, which at the time "expressly barred recovery for injuries which resulted from the plaintiff's intentional conduct." *Nat'l R.R. Passenger Corp. v. Everton,* 655 N.E.2d 360, 363 (Ind.Ct.App.1995) (citing Ind.Code § 34–4–33–2(a)) (now I.C. § 34–6–2–45(b)). The definition was changed in 1995

to no longer preclude recovery as a result of the plaintiff's intentional conduct. *See id.* at 363 n. 4.

**5.** And under the comparative fault act, a plaintiff may recover even as a result of his own willful, wanton, or even intentional conduct. *See* I.C. § 34–6–2–45(b); *Everton,* 655 N.E.2d at 363. Of course, the allocation of fault remains an issue of fact for the jury to decide. *Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048, 1056 (Ind.2003).

ly serving visibly intoxicated patrons." *Nat'l R.R. Passenger Corp. v. Everton*, 655 N.E.2d 360, 366 (Ind.Ct.App.1995), *trans. denied.*

For all of these reasons, we conclude that our General Assembly has spoken clearly in this area and the trial court erred in concluding that Gray could not recover from Sandstone because of his voluntary intoxication. The parties do not challenge the trial court's determination that genuine issues of material fact exist with regard to whether Sandstone had actual knowledge that Gray was visibly intoxicated and whether Gray's alleged injuries were proximately caused by Gray's intoxication. We therefore reverse the trial court's entry of summary judgment in favor of Sandstone and remand the case for proceedings consistent with this opinion.

Reversed and remanded.

BAKER, C.J., and NAJAM, J., concur.