# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**BRIAN M. KUBICKI**
Jones Obenchain, LLP
South Bend, Indiana

ATTORNEY FOR APPELLEE:

**JAY T. HIRSCHAUER**
Hirschauer & Hirschauer
Logansport, Indiana

FILED

Dec 06 2012, 8:49 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CONNIE YATES, RICK YATES, | ) | |
| JASON TIBBS, and PAULINE TIBBS, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 50A04-1204-CT-192 |
| | ) | |
| LEVI WAYNE KEMP, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARSHALL CIRCUIT COURT
The Honorable Curtis D. Palmer, Judge
Cause No. 50C01-0911-CT-28

**December 6, 2012**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Connie Yates, Richard Yates, Jason Tibbs, and Pauline Tibbs appeal the trial court's grant of partial summary judgment to Levi Wayne Kemp. We reverse and remand.

## ISSUE

The Yateses and Tibbses raise one issue, which we restate as: whether the trial court erred by granting Kemp's motion for summary judgment as to their claims for nuisance.

## FACTS AND PROCEDURAL HISTORY

The parties are neighbors on Thorn Road in rural Marshall County. The Yateses and Tibbses own contiguous properties on the west side of Thorn Road, and Kemp owns land across the road from them.

In 1962, Kemp built an earthen berm at the back of his property for use as a shooting range. At that time, there were no Marshall County ordinances, Marshall County zoning restrictions, or statewide laws in effect governing shooting ranges. The direction of fire at the range is oriented to the east, away from Kemp's home, Thorn Road, and the Yateses' and Tibbses' properties. Kemp expanded the range in 1968, 1985, and 2006. At the time of the 2006 expansion, Marshall County had enacted a comprehensive zoning ordinance. In 2008, Kemp obtained the Marshall County Board of Zoning Appeals' approval to continue to operate the shooting range, subject to certain conditions not at issue here. Kemp allows family and friends to use the range. In addition, police officers from nearby departments use the shooting range for training.

2

The Yateses purchased their property in 1995, and the Tibbses purchased their property in 2006. They object to the manner in which Kemp operates his shooting range, claiming that it hinders their enjoyment of their properties. Consequently, they filed suit against Kemp, claiming nuisance, negligence, infliction of emotional distress, and strict liability. Kemp filed a motion for summary judgment, and the Yateses and Tibbses filed a response. After a hearing, the trial court granted Kemp's motion in part and denied it in part. Specifically, the trial court granted summary judgment to Kemp on the Yateses' and Tibbses' claims for nuisance and infliction of emotional distress, granted summary judgment to Kemp as to any damage to the Yateses' and Tibbses' properties that were allegedly caused by stray bullets, and dismissed Jason Tibbs as a party-plaintiff with respect to his claim for damage to real property. The trial court denied Kemp's motion as to the claims of negligence and strict liability. Subsequently, at the Yateses' and Tibbses' request, the trial court determined that its grant of summary judgment to Kemp on the nuisance claim was a final, appealable judgment. This appeal followed.

## DISCUSSION AND DECISION

The Yateses and the Tibbses argue that the trial court erred by granting partial summary judgment to Kemp as to their claims for nuisance. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). As with a trial court, a reviewing court construes all factual inferences in favor of the nonmoving party and resolves all doubts as to the existence of a material issue against the moving party. *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1270 (Ind. 2009). Where,

3

as here, a trial court issues findings of fact on a motion for summary judgment, such findings aid our review but are not binding upon us. *Allen v. First Nat'l Bank of Monterey*, 845 N.E.2d 1082, 1084 (Ind. Ct. App. 2006). The interpretation of a statute is a pure question of law and is reviewed under a de novo standard. *Demming v. Underwood*, 943 N.E.2d 878, 888 (Ind. Ct. App. 2011), *trans. denied*.

The trial court determined that Kemp was not liable for his neighbors' nuisance claims due to "I.C. § 14-22-31.5-1 et seq." Appellants' App. p. 11. Therefore, we must consider the principles of statutory construction. Our primary goal in applying a statute is to ascertain and give effect to the intent of the legislature. *Demming*, 943 N.E.2d at 888. The language of the statute itself is the best evidence of legislative intent, and we must give all words their plain and ordinary meaning unless otherwise indicated by statute. *Id.* If a statute contains clear and unambiguous language, it is not subject to judicial interpretation. *Henderson v. Coutee*, 829 N.E.2d 1028, 1030 (Ind. Ct. App. 2005). In construing a statutory provision, we will assume that the legislature did not enact a useless provision. *Gray v. D & G, Inc.*, 938 N.E.2d 256, 259 (Ind. Ct. App. 2010). Therefore, when possible, every word is to be given effect and no part of the statute is to be construed so as to be meaningless if it can be reconciled with the rest of the statute. *Id.* We view a statute within the context of an entire act, not in isolation. *In re Visitation of A.R.*, 723 N.E.2d 476, 479 (Ind. Ct. App. 2000).

The key statute here, Indiana Code section 14-22-31.5-6 (1996) ("section 6"), provides a safe harbor in limited circumstances for owners, operators, and users of shooting ranges against claims of noise pollution. It provides:

4

> A person who owns, operates, or uses a shooting range is not liable in any civil or criminal matter relating to noise or noise pollution that results from the normal operation or use of the shooting range if the shooting range complies with a law or an ordinance that applied to the shooting range and its operation at the time of the construction or initial operation of the shooting range, if such a law or ordinance was in existence at the time of the construction or initial operation of the shooting range.

*Id.* The parties have not cited to any prior cases applying this statute, and we have not found any.

The Yateses and the Tibbses argue that Kemp is not entitled to the protection granted by section 6 because there were no applicable laws or ordinances in effect at the time he built and began operating his shooting range. Kemp responds that their argument is "nonsensical."[1] Appellee's Br. p. 7. The plain language of the statute supports the Yateses' and the Tibbses' argument. Section 6 provides that in order for a shooting range to be immune from liability for noise pollution, a law or ordinance governing shooting ranges must have been in effect when the range in question was built or initially operated. Furthermore, the law or ordinance must apply to the range, and the range must be in compliance with the requirements of the law or ordinance. We are bound to carry out the legislature's intent as expressed in the plain language of the statute. In this case, there is no dispute that there were no applicable local ordinances or state laws in effect when Kemp built his range in 1962. If we were to hold that Kemp is entitled to the protection afforded by section 6 even though he does not meet that statute's conditions, we would

---

[1] Kemp also asserts that the Yateses and Tibbses have waived this argument by failing to present it to the trial court. Based upon our review of the record, we disagree and address the argument on the merits.

5

effectively nullify those conditions. We may not construe portions of a statute to be meaningless. *See Gray*, 938 N.E.2d at 259.

Section 6 is part of the Indiana Range Protection Act ("the Act"), which is codified at Indiana Code sections 14-22-31.5-1 through -7. Kemp argues that if his shooting range is not immune from liability under section 6, then the entire Act is "meaningless." Appellee's Br. p. 7. To the contrary, our application of section 6's plain language is logical in the context of the Act as a whole. According to a section of the Act, "[A] local unit of government may regulate the location, use, operation, safety, and construction of a shooting range." Ind. Code § 14-22-31.5-5 (1996) ("section 5"). If a shooting range is built and operated in compliance with an applicable local ordinance after the ordinance is issued, then section 6 grants owners, operators, and users of the shooting range the benefit of a safe harbor against lawsuits alleging excessive noise.

Another provision of the Act, Indiana Code section 14-22-31.5-7 (1996) ("section 7"), states that the owner or operator of a shooting range that existed before July 1, 1996, may repair a building at the range as necessary to ensure public safety and the continued use of the building, even if the building does not comply with an ordinance adopted by a local unit of government. In addition, the owner or operator may also expand the membership of the shooting range regardless of limits imposed by a local ordinance. *Id.* Thus, section 7 offers protection to preexisting shooting ranges against subsequently-enacted ordinances in specific circumstances. Reading sections 5, 6, and 7 together, it is clear that the General Assembly knew how to indicate that a provision applies to a shooting range that was built before an ordinance was enacted. Thus, the Assembly

6

could have extended the safe harbor provision in section 6 to all ranges, regardless of whether they were built before or after governing ordinances took effect. However, the Assembly chose not to take that step. As a result, based on the plain language of section 6 and its context within the Act as a whole, we conclude that Kemp is not shielded by section 6 from liability related to his neighbors' nuisances claim arising from noise pollution.

Kemp argues that even if section 6 is inapplicable, he is still entitled to summary judgment on the nuisance claims because the Yateses and Tibbses failed to establish a dispute of material fact as to their claims. By statute, a nuisance is defined as:

[w]hatever is:

(1) injurious to health;

(2) indecent;

(3) offensive to the senses; or

(4) an obstruction to the free use of property;

so as essentially to interfere with the comfortable enjoyment of life or property . . . .

Ind. Code § 32-30-6-6 (2002). Regarding the nature of nuisance, this Court has stated:

Nuisances may be either public or private. A public nuisance is one which affects an entire neighborhood or community, while a private nuisance affects only [a] single person or a determinate number of people. The essence of a private nuisance is the use of property to the detriment of the use and enjoyment of another's property.
Both public and private nuisances are further subdivided into nuisances per se, or nuisances at law, and nuisances per accidens, or nuisances in fact. A nuisance per se, as the term implies, is that which is a nuisance in itself, and which, therefore, cannot be so conducted or maintained as to be lawfully carried on or permitted to exist. Thus, for

7

example, a house of prostitution and an obstruction that encroaches on the right-of-way of a public highway are nuisances per se. On the other hand, an otherwise lawful use may become a nuisance per accidens by virtue of the circumstances surrounding the use.

Logically, therefore, the determination that something is a nuisance per se is a question of law for the court, and the determination of whether that which is not in itself a nuisance is a nuisance in fact is a question for the jury or the judge as trier of fact. The latter determination is to be made by the trier of fact in light of all the surrounding facts and circumstances.

*Wernke v. Halas*, 600 N.E.2d 117, 120 (Ind. Ct. App. 1992) (citations and quotations omitted). To recover in a nuisance action the complaining party need show only inconvenience, annoyance, or discomfort. *Lesh v. Chandler*, 944 N.E.2d 942, 951 (Ind. Ct. App. 2011). Noise may be a nuisance if it is unreasonable in its degree, and reasonableness is a question of fact. *Id.*

The Yateses and the Tibbses have complained that Kemp is operating his shooting range to the detriment of their use and enjoyment of their property. Therefore, they are alleging a private nuisance. Furthermore, given that the range received conditional approval from the Marshall County Board of Zoning Appeals in 2008, we conclude that the range is an otherwise lawful use that may become a nuisance per accidens depending upon the circumstances surrounding the use. Thus, we must determine if the Yateses and the Tibbses have established a dispute of material fact as to whether Kemp has caused them to experience inconvenience, annoyance, or discomfort.

The Yateses and Tibbses tendered the following evidence. During some months, Kemp's shooting range is in use on a daily basis, occasionally in the evening. When the police train at the range, they shoot for up to three hours. The volume of noise coming from Kemp's shooting range frightens the Yateses' horses, and Connie Yates refrains

8

from riding or training her horses while Kemp's range is in use because she fears that a loud gunshot would spook a horse, thereby endangering the rider. Furthermore, the Yateses would like to make their horses available for use as part of a riding program for at-risk youth, but they have not done so because Connie is concerned that Kemp's shooting range poses a risk to persons riding her horses. In addition, Connie does not allow her granddaughter to play outside when Kemp's range is in use.

The Tibbses also refrain from riding their horses while Kemp's range is in use because the horses become frightened. On September 19, 2008, Jason Tibbs was riding his horse on his property when the horse was startled by shots fired at Kemp's range, causing the horse to rear up, which resulted in Jason falling to the ground and sustaining injury. In addition, the volume of the noise from shooting at the range is so loud that the Tibbses sometimes stay indoors and close their windows when the range is in use.

Furthermore, the Yateses and Tibbses have observed that Kemp uses his shooting range at times calculated to interfere with their horse riding activities. All of this evidence is sufficient to establish a dispute of material fact as to whether Kemp has caused his neighbors to experience inconvenience, annoyance, or discomfort. *See Muehlman v. Keilman*, 257 Ind. 100, 272 N.E.2d 591, 595-96 (Ind. 1971) (finding sufficient evidence of nuisance where homeowners testified that their neighbor maliciously ran the engines of his diesel trucks at all times of the day, and the noise and fumes interfered with neighbors' enjoyment of their home). Consequently, the trial court erred by granting summary judgment to Kemp on the Yateses' and Tibbses' claims for nuisance.

## CONCLUSION

For the reasons stated above, we reverse the judgment of the trial court and remand for further proceedings.

Reversed and remanded.

VAIDIK, J., and CRONE, J., concur.